4    783<br>
e35   501

[No. 524.  Decided September 30, 1892.]

H. B. SLAUSON, *Assignee, Appellant,* v. SCHWABACHER
BROS. & CO. AND J. H. McGRAW, *Respondents.*

SURVIVAL OF CAUSE OF ACTION—ASSIGNABILITY—DAMAGES FOR WRONGFUL
ATTACHMENT.

Mere personal torts, which die with the party and do not survive
to the personal representative, are not capable of passing by assignment.

Where an insolvent debtor makes an assignment for the benefit
of his creditors, the assignee cannot maintain an action against an
attaching creditor and the sheriff for injury to the business credit
and reputation of his assignor as a result of the alleged malicious
levy of a writ of attachment prior to the assignment.

*Appeal from Superior Court, King County.*

*H. B. Slauson* (*J. W. Langley,* and *Allen & Powell,* of
counsel), for appellant.

*Preston, Carr & Preston,* and *W. R. Bell,* for respondents.

The opinion of the court was delivered by

DUNBAR, J.—This action was brought by the appellant
in the court below against respondents, Schwabacher Bros.
& Co., and J. H. McGraw, as sheriff of King county, for
the alleged malicious levy of a writ of attachment on the
stock of groceries of one A. Herramb.  This suit was
brought by appellant as assignee of said A. Herramb for
her benefit, and for the benefit of her creditors, said assign-

ment having been made under the general insolvency laws approved March 6, 1890. The complaint alleged perishable goods destroyed by reason of said attachment valued at $75.00; goods taken from store valued at $50.00. The court allowed proof of these items, and judgment was obtained for the same. But the plaintiff also alleged the payment of clerks and of rent during the time the attachment was in force; also loss of profits of business and sale of goods by assignee, attorney's fee in attachment proceedings, and injury to business credit and reputation. The court refused to allow proof of these losses. Judgment was rendered in favor of plaintiff for the first two items, from which said judgment be appealed, alleging error of the court in rejecting the proof offered.

This case raises the question, what causes of action are assignable under the laws of this state. This being a new question in this state, we have examined with great interest the very able presentation of the law and authorities presented in the briefs, both of appellant and respondents. Of course, it is conceded that at common law the right of action for injuries to personal property died with the party entitled, and that the cause of action was not assignable, and that no chose in action of any kind was assignable. This rule of the common law was, however, modified by 3 Edw. III, which permitted the assignment of choses in action to extend to commercial paper. The rigidity of the law was for a while avoided by the practice of compelling the assignor to allow the use of his name in cases of this kind. But under the provisions of the code compelling all suits to be brought in the name of the real party in interest, we are governed by the rules of the common law as modified by 3 Edw. III, and our local statutes. So universal, however, has been the enlargement of the ancient rule by statute that most of the cases reported involve the construction of a statute. We think it may be fairly said

that by a great preponderance of authority mere personal torts which die with the party, and do not survive to the personal representatives, are not capable of passing by assignment, and, conversely, that a cause of action which *does* survive to a personal representative can be enforced in the name of an assignee. This test was laid down notably in *Zabriskie v. Smith*, 13 N. Y. 322; Bliss on Code Pleadings, § 37; *Byxbie v. Wood*, 25 N. Y. 707; Pomeroy's Equity Jurisprudence, § 1275, and is generally the recognized doctrine.

The question then becomes important: What causes of action under our statute abate by the death of the party entitled; or, affirmatively stated, what causes of action survive to the personal representatives? To render an investigation of the cases cited helpful to the court, it becomes necessary to compare the statutes under which they were decided with the statutes of our state. In New York the statute provides that for wrongs done to the property, rights, or interests of another, for which an action might be maintained against the wrongdoer, such action may be brought by the person injured, or, after his death, by his executor or administrator, in the same manner and with like effect in all respects as an action founded on contract. It then proceeds to make a few exceptions which it is not necessary to enumerate. The language, "for wrongs done to the property, rights, or interests of another," is fully as sweeping as the language of our statute, and yet the court of appeals, in *Zabriskie v. Smith, supra*, decided that a right of action for damages caused by false and fraudulent representations of solvency of the vendee of merchandise was not assignable. This is one of the leading cases on this question, and has received much criticism, both favorable and adverse. Mr. Bliss, in his work on Code Pleadings, § 43, asserts that the decision was made without the consideration of the statute. The same criticism is made

in *Jackson v. Daggett,* 24 Hun. 205, where it is asserted that the question was examined, in *Zabriskie v. Smith,* on common law principles and authorities without any reference to the statute on the subject: and further that it is against the weight of authority. In *Jackson v. Daggett* it is held that under the provisions of the New York code a cause of action against a sheriff upon his failure to return an execution against property within the time required by law, and for making a false return, is assignable. The same criticism of *Zabriskie v. Smith* is made in *Fried v. New York Central R. R. Co.,* 25 How. Pr. 286. But an examination of this case, in our opinion, shows that these criticisms are unfounded; for while the learned judge (DENIO) who penned the opinion of the court did not recite the particular language of the code, he referred to it and commented upon it, and the whole opinion shows that a construction was placed upon the provisions of the code bearing on that question, and that it could not have been decided under the common law rule. Afterward, in *Haight v. Hayt,* 19 N. Y. 464, the court held that a cause of action against a vendor of land for fraudulent representations as to an incumbrance, survived to the personal representatives.

Whether or not a distinction can be maintained between *Zabriskie v. Smith* and *Haight v. Hayt,* there is a plain distinction between *Haight v. Hayt* and the case at bar. In the former the value of the farm, a part of the estate, had been affected by the fraud practiced, but in the case at bar the estate or property of the assignor had not been affected. The main allegation of damages is for loss of reputation. It is not a clain for injury or destruction of property; to establish that part of the claim the court allowed evidence to be introduced, and a judgment was rendered therefor. It is true that the language of the assignment law is broad. Sec. 13, p. 87 of the Laws of 1889–90, provides that "any assignee as aforesaid shall have as full power and authority

to dispose of all estate, real and personal, assigned, as the debtor had at the time of assignment, and to sue for and recover, in the name of such assignee, everything belonging to or appertaining to said estate, and generally to do whatever the debtor might have done in the premises." But broad as the language is, it only gives the assignee power to deal with *property* of the estate, the estate which was assigned—so that the pertinent question is, what is property of an estate? Or, in other words, what is the estate? Is a man's reputation a part of his estate? Can it be said that an assignor's creditors or a decedent's administrators or executors have any financial interest in his reputation? It cannot be any part of the assets of the estate; it cannot be made available to pay the debts of the estate. If by this attachment his reputation so suffered that he could no longer pursue the calling of a merchant, then it was simply a personal right to pursue a particular calling or business that he was deprived of, and could in no way affect the estate assigned, and it is only in the estate as it exists at the time of the assignment that the creditors have any interest.

So far as the provisions of § 704, Code Proc., are concerned, they must be construed in connection with the whole chapter and subject under consideration, and especially in connection with the preceding section, 703. We think the only fair construction of § 703 is that the legislature intended to confer upon personal representatives certain rights in contradistinction to the rights of heirs, and that in § 704 they were legislating with reference to causes of action which already survived, and were not attempting to announce what causes of action *should* survive. If this theory be not true, then the enactment of § 703 was useless, for it could have been expressed in § 704 by simply the omission of the words "cause of." If the appellant's construction is correct, there is no limit whatever to causes,

for causes of action for assault, slander, and for other purely personal causes, would survive; and this would be so wide a departure from the established rule that the legislature would hardly be deemed to have intended it without plainly expressing such intention. Again, this construction of the law conflicts with the provisions of the assignment law itself, which we have quoted above, if the rule is to obtain that a power of assignment is to be tested by the survival of causes of action to personal representatives, because, as we have seen under the provisions of the assignment law, the assignee is only clothed with the authority to act with relation to the *property* of the estate, and if the rule does not obtain, then the powers of the assignee must be gathered exclusively from the provisions of the assignment law, which is a special enactment on the subject.

Of the cases cited by appellant to sustain her theory, *Stewart v. Balderston*, 10 Kan. 131, was in reality an action to recover fees wrongfully and fraudulently demanded by, and paid to, the officers of the land office, and, of course, directly affected the estate of the assignors, and can be readily distinguished from this case. *Davis v. Railroad Co.*, 25 Fed. Rep. 786, which was also a Kansas case, held that where a transportation company neglected its duty, and by its neglect the property of the assignor suffered damage, it was not a tort to the person, but was a tort which resulted injuriously to the estate, and was, therefore, assignable. These cases fall squarely within the provisions of the Kansas statute which provides that "in addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to the person, or for real or personal estate, or for any deceit or fraud, shall also survive." Under such a statute the Kansas cases could not have been otherwise decided. *Final v. Backus*, 18 Mich. 218, decided that the assignee of a demand originating in favor of an assignor for the conversion of logs

obtained by trespass upon certain lands granted to the assignor, may bring trover in his own name. And *Grant v. Swith*, 26 Mich. 201, was a similar case, being an action of trover for the conversion of timber, and was decided on the strength of the decision in *Final v. Backus*. These two cases would plainly fall under the general rule that prevails where property interests of the estate are involved, and could, in no sense, be parallel with the case at bar. But, outside of that, the Michigan statutes provide that, in addition to the action which survived at common law, the following shall survive, that is to say, action of replevin and trover, action for assault and battery, for false imprisonment, for goods taken and conveyed away and actions for damages done to real or personal property. And so, without further particularizing, we think most of the cases cited by appellant were either actions for injury to property of the assignor or were decided under statutes the provisions of which plainly compel such decisions. Thus, in Iowa, the statute laws of 1862 provided that no cause of action, either *ex delicto* or *ex contractu* abates by the death of either party if from the legal nature of the case it can survive; and that statute was construed by the supreme court of Iowa, in *Shafer v. Grimes*, 23 Iowa, 550, Judge DILLON delivering the opinion of the court, as abrogating the common law of *actio personalis moritur cum persona*, and consequently, with that construction, only causes of action purely personal would survive, and under the rule that the power to assign and to transmit to the personal representatives are convertible propositions, could also be assigned.

*Byxbie v. Wood, Supra*, was a case where the defendant had received large sums of money from the assignor to which he was not entitled. A referee found that the assignee was entitled to recover them back.

"Not," says the court in that case, "for any fraud, but

for the money which the defendant had so received, and which, being so received, he had no right to retain. This state of facts does not necessarily require an action to be brought for a tort, even if it allows one to be so brought. Such facts always raised in law the implied promise which was the contract-cause of action in *indebitatus assumpsit* for money had and received. Having money that rightfully belongs to another, creates a debt; and wherever a debt exists without an express promise to pay, the law implies a promise; and the action always sounds in contract."

This was the point passed upon by the court in that case; and while there was some talk on the other proposition, it is especially announced at the conclusion of the opinion that the court did *not* pass upon the question whether, assuming the action to be for tort, it was of such a character as to be assignable.

There seems to be a very warm contention between the attorneys for the respondent and appellant as to what was actually decided in *Cleveland Coal Co. v. Sloan* (Ky.), 14 S. W. Rep. 279. We think, upon a careful reading of that case, that it substantially supports appellant's contention, although the language of the opinion seems somewhat contradictory; but the court certainly undertook to hold that damage to the credit of the firm was not a personal injury. We think, however, that the great weight of authority supports the contention of respondents, and that most of the cases cited in respondents' brief sustain that contention, especially the cases which interpret and construe the United States bankruptcy law, which we think is more liberal in relation to the survival of actions than the statutes of the State of Washington. The cases are cited in respondents' brief, and a re-citation is unnecessary here, especially as an analysis of such cases would render this opinion too long. We think the appellant was allowed to prove all the damages that he was entitled to prove, and that therefore no error was committed in the rejection of the proof offered.

Many points are raised in respondents' brief against the validity of the judgment obtained; but as it does not appear from the record that respondents perfected their appeal from said judgment, we have not considered them.

The judgment is affirmed.

Anders, C. J., and Stiles, Scott and Hoyt, JJ., concur.