## TAMM v. FORD MOTOR CO.
### No. 10335.

Circuit Court of Appeals, Eighth Circuit. Dec. 17, 1935.

Rehearing Denied Jan. 8, 1936.

724

E. H. McVey, of Kansas City, Mo. (C. A. Randolph, Spurgeon L. Smithson, and Stanley Garrity, all of Kansas City, Mo., on the brief), for appellant.

John G. Madden, of Kansas City, Mo. (James E. Burke and Madden, Freeman & Madden, all of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, WOODROUGH, and FARIS, Circuit Judges.

FARIS, Circuit Judge.

Plaintiff, appellant herein, as trustee in bankruptcy of Herb Ford, Inc., sued defendant in an action at law for damages. The trial court sustained a demurrer to his third amended petition. He declined to plead further, and thereupon the court rendered a final judgment against him, and he appealed.

Plaintiff (for we shall for clarity refer to the parties as they stood below) filed four petitions in the case. All of these, though three of them constitute abandoned pleadings, he has seen fit to incorporate in the record before us. Two of these petitions were voluntarily abandoned. To the third in point of time of filing, a demurrer was sustained by the trial court. Thereupon plaintiff filed his third amended petition; again a demurrer thereto was filed and sustained. There were five grounds alleged in the demurrer. The order sustaining the demurrer is a general one and does not disclose the particular reason or reasons for which the court nisi deemed the petition bad or insufficient.

We have had the very greatest difficulty in ascertaining whether the third amended petition is an action ex delicto, or ex contractu. In many aspects it has features allocating it to the category of a breach of contract, as also those which should place it among actions for a tort, to wit, fraud and deceit. In this dilemma, it is permissible and proper to adopt the legal characterization of plaintiff himself, who we think plainly allocates it among actions ex delicto. For he characterizes it in his brief thus: "This is an action at law, brought by Albert Tamm, Trustee of the bankrupt estate of Herb Ford, Inc., (a Missouri Corporation), against the Ford Motor Company, a Michigan Corporation for damages arising out of certain false statements and inducing misrepresentations of defendant."

Candor and "a decent respect to the opinions of mankind," no doubt require that as much of the petition, held bad below should be set forth, as shall serve to make plain the nature of the action, and to illustrate the successful attack made in, and sustained by the trial court, on its sufficiency. Such salient parts thereof read thus:

"Plaintiff states that in the latter part of July, 1931, defendant through its manager, M. D. Brown, informed Herb Ford, Inc., that it would be necessary for it to move to another location, and if it refused to do so, the contract would be cancelled; that the dealership or agency of the defendant at 2705-9 East 15th St., Kansas City, Missouri, could be purchased; that said agency had a large clientele and an established name and reputation, and its business, in the event of purchase, would accrue to Herb Ford, Inc. Said branch manager represented to said Herb Ford, Inc., that the defendant company would by the 10th day of September, 1931, have in production and delivery to its readers, including Herb Ford, Inc., a new model car with necessary parts and accessories, which new car could and would meet competition and find a ready sale. And defendant further represented to said Herb Ford, Inc., that if it would purchase said 15th Street Agency and move thereto, its contract would be continued and it would promptly fill all orders procured by Herb Ford, Inc., for said new car, and have said new car ready for delivery after September 10, 1932. Plaintiff states that said representations were made to Herb Ford, Inc., for the purpose of inducing it to give up its Mill Creek location and purchase the said 15th Street Agency and to continue as the dealer under the hereinbefore mentioned contract, and to induce said Herb Ford, Inc., to continue the advertising and sale of defendant's products, and plaintiff states that said Herb Ford, Inc., relied upon said representations, and in reliance thereon purchased said East 15th Street Agency on or about August 10, 1931, paying therefor the sum of Twelve Thousand Five

Hundred ($12,500.00) Dollars; that it expended the sum of Two Thousand Five Hundred ($2,500.00) Dollars in moving its business and equipping the new premises and making installations therein; that it was necessary to cancel its lease upon the premises at Mill Creek and said Herb Ford, Inc., was compelled to and did obligate itself in the sum of Fifteen Hundred ($1,500.00) Dollars as consideration for cancellation of said lease; that said Herb Ford, Inc., did further give up its Mill Creek place of business to the loss of its good will therein established.

"Plaintiff states that defendant failed to have its new car for delivery on September 10, 1931; but the *defendant then represented to Herb Ford, Inc., that its new car would be ready for delivery and available for sale by November 1, 1931,* and in reliance thereon said Herb Ford, Inc., continued its business, but plaintiff states that defendant failed to have its car in production for delivery by November 1, 1931, and did not have its said car in production for delivery until the month of June, 1932. But plaintiff states that during said intervening period of time defendant thereafter made like continuing representations to said Herb Ford, Inc., that its new car would be in production and delivery early in December, 1931, and again early in January, 1932, and early in February, 1932, and early in March, 1932, and early in April, 1932, and early in May, 1932, all of which representations were believed and relied upon by said Herb Ford, Inc., and in reliance thereon said Herb Ford, Inc., continued in its business at said East 15th Street location to its loss as herein set out. *Plaintiff states that the representations aforesaid were false to the knowledge of the said defendant, or were made recklessly, it knowing at the time of the making of said representations that the new model car would not and could not be made ready for delivery within the times represented.* Plaintiff states further that the manufacturing business of defendant is and was carried on by what is known as 'mass production,' and that the bringing out of a new model automobile requires a large amount of preparation in advance, including the installation of new machinery and equipment, rearrangement and reorganization of its factory units and its manufacturing facilities, and that the state of preparation and knowledge of the time when the factory

would be in a position to manufacture and deliver the new car was information within the exclusive knowledge of the defendant and wholly unknown to Herb Ford, Inc. (Italics supplied.)

"That the defendant at the time of or prior to the date of the representations aforesaid, to-wit: August, 1931, ceased the production of its Model A cars, parts, and accessories, but information as to the coming of the new model car became known to the general public as early as October, 1931, whereby the value of Model A cars became greatly depreciated; that said Herb Ford, Inc., by reason of the foregoing, had no new automobile for sale after September 10, 1931, but relying upon the agreements aforesaid Herb Ford, Inc., maintained and continued its business at its East 15th Street location at the instance of defendant as aforesaid from September 10, 1931, to June 10, 1932, at an operating loss during nine months, in the sum of Twenty-two Thousand Five Hundred ($22,500.00) Dollars.

"Plaintiff states that when defendant ceased production of Model A cars, the defendant instructed Herb Ford, Inc., to procure as many orders as possible for its new model car and said Herb Ford, Inc., acting under the instructions aforesaid, employed salesmen and incurred expense in soliciting orders for the new model car, and did secure one hundred forty-one orders therefor, which orders were lost by reason of the failure of defendant to supply the new model car for delivery as herein set forth. That under the agreements with defendant, Herb Ford, Inc., had a profit of One Hundred Ten ($110.-00) Dollars per car, or a gross profit of Fifteen Thousand Five Hundred Ten ($15,510.00) Dollars on said orders secured by it and lost as aforesaid.

"Plaintiff states that had the said new car been available for delivery on September 10, 1931, or within a reasonable time thereafter, said Herb Ford, Inc., could and would have continued its business, but relying upon the representations of defendant as hereinbefore set out, said Herb Ford, Inc., incurred costs and expenses in the continuance of its business, and in advertising the products of the defendant and in establishing the name, custom and good will, whereby said Herb Ford, Inc., by reason of the foregoing, sustained such losses that it was compelled to cease business and thereby its

plant, machinery, equipment, and parts depreciated in value, to its loss in the sum of Twenty Thousand · ($20,000.00) Dollars."

■ Of the five grounds of demurrer, in the view we are constrained to take of the case, only three need be mentioned. These are: (a) "That plaintiff does not have legal capacity to sue; (b) that several causes of action have been improperly united; and (c) that the petition does not state facts sufficient to constitute a cause of action against defendant." All three of the above grounds of demurrer are warranted by the statute of Missouri (section 770, R.S. of Missouri 1929 [Mo.St. Ann. § 770, p. 1000]), which in matters of practice and procedure in actions at law controls a federal court, and constitutes the legal test of goodness, vel non of the petition under discussion. Ward v. Morrow (C.C.A.) 15 F.(2d) 660; Slocum v. Erie Railroad Co. (D.C.) 36 F. (2d) 277.

■ In limine, although the question fairly arises as the first ground of demurrer urged below, appellee contends that plaintiff as the trustee in bankruptcy of Herb Ford, Inc., has no right to sue, for that the title to the chose in action did not vest in him, for the alleged reason that a trustee in bankruptcy does not take title to an action for fraud and deceit, and ,because such trustee is not a proper party plaintiff under the statutes of Missouri. In many of the cases it seems to have been considered that, the question is solvable by a reference to the local statutes of the state wherein the controversy ·arose. Cf. Tufts v. ·Matthews (C.C.) 10 F. 609; Slauson v. Schwabacher, 4 Wash. 783, 31 P. 329, 31 Am. St.Rep. 948. But we take leave to doubt whether such test is applicable. This for the reasons that the question is not one of proper parties, strictly speaking, but is obviously one of title. If under the Bankrupt Act (11 U.S.C.A.) the trustee takes title to the chose in action, he alone may sue to recover; if he does· not, no local statute can at all aid or affect the situation. For example, the statute of Missouri ·says, touching proper parties, that "every action shall be prosecuted in the name of the real party in interest" (section 698, R.S.Mo.1929 [Mo.St.Ann. § 698, p. 900]). But "a trustee of an express trust, or a person expressly authorized by statute, may sue in his own name,"

etc. (Section 699, R.S.Mo.1929 [Mo.St. Ann. § 699, p. 906]). So, if the trustee, perforce the Bankrupt Act (11 U.S.C.A.), takes title to the particular chose in action, he may sue, because he is the real party in interest, and being the holder of the title, the Bankrupt Act implicitly authorizes ·him to bring and maintain the action. But this he does perforce the Bankrupt Act, and not by virtue of the Missouri statute, which, however, unless he is the "real party in interest," for that he takes title to the chose in action, forbids him to maintain the action.

True it is, that subdivision (a) (5) of section 110, title 11 U.S.C.A., deals with "property which prior to the filing of the petition" the bankrupt "could by any means have transferred." Of course, if a chose in action, notwithstanding the fact that subdivision (6) of the above section deals specifically with such choses in action, may yet be allocated to the provisions of subdivision (5); because of furnishing the property test of the latter subdivision, of‚ assignability vel non, a state statute or policy would necessarily come into the equation. But it seems clear that Congress by the provisions of subdivision (6), section 110, title 11 U.S. C.A., undertook to put choses in action in; a separate and distinct class, and to deal with them therein exclusively. Congress; would hardly have intended to relegate a matter of title in the trustee to the varying statutes and decisions of the several· states. In some cases it is true Congress did this, but it makes it clear always that it is doing so. Examples of this are found in the subservience of the Bankrupt Act to state statutes touching liens and the· recordation thereof.

We think Congress intended to deal· fully with the title to choses in action by what it said in subdivision (6), supra, which confers title on the trustee in bankruptcy to "rights of action arising upon· contracts or from the unlawful taking or· detention of, or injury to, his property."

. Does the cause of action here come· within the language of subdivision (6),. supra? The question presents a most. troublesome and controversial query, on which the state courts are much divided. It is settled, of course, that a right of action for a purely personal tort, as for example, for damages for a personal injury, or libel, or slander, does not pass to the trustee. 3 Remington on Bankruptcy

§ 1268; 3 R.C.L. 228. But the precise question here is by no means settled by a full accord of judicial decisions; largely, these cases are from state courts. We have not found, nor has the diligence of counsel found for us, any federal cases, except In re Gay (D.C.) 182 F. 260, and In re Harper (D.C.) 175 F. 412, in which the troubling point has been passed on squarely, and in favor of the trustee's title. Both of the above cases are from District Courts. In many cases which we have examined there may be found intimations in principle favoring the view urged on us by appellee, that an action for fraud and deceit such as this at bar does not pass to the trustee. But it seems to us that the reason of the thing and the language used in subdivision (6), supra, largely favor the view taken by the two District Courts in the Gay and Harper Cases, supra.

For the reason underlying the view that an asset such as is here in dispute goes to the estate and may not be retained by the bankrupt, *we have a situation pleaded* wherein it appears that the bankrupt had a contract with appellee whereby in reliance on the agreements made by appellee the bankrupt lost well-nigh all of its property, became insolvent, and was forced into bankruptcy. It is beside the present point under discussion that the bankrupt was, as the plaintiff alleges, induced to enter into this contract by fraud and misrepresentations. The inducements and false statements and misrepresentations merely went to the entering into the contract. They serve to characterize the nature of the action which the plaintiff elected to bring. (We pass as afield here his right to so elect.) But the thing in the last analysis which plaintiff is endeavoring to recover is damages, for the failure of appellee to perform its contract, in a sum sufficient to recoup the bankrupt for the loss which appellee's breach of its agreements worked on the bankrupt's estate. It is difficult to conceive of a strictly personal injury accruing to a corporation, except, perhaps, for slander or libel; but, of course, this argument aids but little, since the rule laid down must be thorough-going in its application. On the above ground based on the first clause of subdivision (6), which considers alone a "right of action arising upon contracts," it is difficult to see why the trustee did not take title to the action at bar.

Again, another clause of subdivision (6), supra, vests title in the trustee to rights of action arising from "injury to his property," i. e., the bankrupt's property. If Congress used the word "injury" in its vernacular, or dictionary sense, then it means, inter alia "detriment to * * * property or interests, or the value of a thing" and detriment connotes, among other things, diminution and destruction. And if Congress used the word "injury" in its meaning in law, it means "an actionable wrong," that is, an actionable wrong to property, in the abstract. The other view here contended for by appellee would narrow the meaning of the word "injury" to a physical hurt or damage to a specific article of property; e. g., to trespass, or waste on real estate, or to burning, breaking, or destroying personal property, and destroy its application to property as a genus, or class. We find ourselves unable to agree with the contention of appellee. Surely Congress never intended that a bankrupt could lose his property to the extent of utter insolvency as here pleaded, and then go into bankruptcy for an immunity bath, and then emerge freed from his creditors and vested with all he had lost. For if the trustee has no title and therefore no right to sue, obviously, the bankrupt retains the title to the chose and may sue (First National Bank v. Lasater, 196 U. S. 115, 25 S.Ct. 206, 49 L.Ed. 408), and the action here must then be allocated to the category of a personal injury to a corporation. We are therefore constrained to follow the cases of In re Gay and In re Harper, both supra, and hold that the trustee in bankruptcy took title to the chose in action here and that he had the right to bring and maintain this suit.

Regrettably, the briefs of both parties cover a wide range of both law and fact on the question of the sufficiency of the petition and consider the case as if it were an action for both deceit and breach of contract. It cannot be both, for there is but one count in the petition and such a commingling in one count of actions sounding both ex delicto and ex contractu would of itself constitute in Missouri a valid ground of demurrer. Section 770, R.S.Mo.1929 (Mo.St.Ann. § 770, p. 1000); Johnson v. Brill (Mo.Sup.) 295 S.W. 558; Darrow v. Briggs, 261 Mo. 244, 169 S. W. 118; Hockley v. Hulet Bros. Storage & Moving Co. (Mo.App.) 16 S.W.(2d) 749.

In its simplest terms, the situation which the pleader sought to incorporate in his petition as his cause of action was this: The bankrupt, to whom we shall refer as such, had made a contract with defendant on April 24, 1930, to buy Ford automobiles and parts, trucks, parts, and accessories, subject to certain "terms, conditions and provisions." These "terms, conditions and provisions" are pleaded only fragmentarily, and unless, as we are not, in a case of this sort permitted to do we go to the three abandoned pleadings, we are not able to know what they are. So many of these as are pleaded throw no light on the decisive questions in the case. There is, for example, a provision, in so much of the fragment of a contract that is, pleaded, that defendant may sell its cars and products to any dealer anywhere and even sell to ultimate users, without becoming liable to the bankrupt for commissions. So, the contract was not an exclusive one in the sense that the bankrupt had a certain fixed territory awarded to him; but the Ford products were so-called exclusive products, in the sense that they could nowhere be bought, except from defendant. There are also provisions pleaded as to the maintenance by bankrupt of a place of business suitably located and equipped; that it would display effective signs; carry an adequate stock of Ford parts, and tools and machinery for repairs; employ competent salesmen and make repairs on cars made by defendant, whether such cars had or had not been sold by the bankrupt. Briefly, no other "terms, conditions, or provisions" are found in so much of the contract as the petition sets out. Nowhere is there to be found any agreement as to the duration of the contract, or as to the number of cars, trucks, or parts, if any, which the bankrupt agreed to buy and defendant agreed to sell. The latter point will again be referred to.

It fairly appears from the petition that at the time of the execution of this contract defendant was making and selling to the bankrupt an automobile known as Model A, and parts and accessories therefor; as also selling trucks and parts therefor, and as to these, so far as anywhere appears, no controversy of any kind ever arose between the bankrupt and defendant.

It is to be gathered from the petition that from April, 1930, till July, 1931, defendant seems to have sold and the bankrupt seems to have bought all cars, trucks, and parts he desired and needed. But plaintiff avers that in July, 1931, one M. D. Brown, the manager at Kansas City of a branch of defendant, stated to bankrupt that it must move its place of business to another location designated by said Brown and that unless it did so its contract would be canceled; that defendant would by September 10, 1931, have a new automobile ready for sale, which would meet all competition and find a ready sale; and that defendant would after September 10, 1931, fill all orders that the bankrupt should procure for said proposed new car. Plaintiff further avers that this statement, that a new car to replace defendant's Model A car in the market, would be speedily ready, was by defendant's manager Brown reiterated and repeated every month for an appearance the following month, from September, 1931, till June, 1932, when the promised new car at last came on the market.

Plaintiff avers that bankrupt canceled its existing lease, and that it moved to the new place designated by said Brown, at its great cost, loss, and expense; so that by reason of the promised appearance, but nonappearance of the new car, it incurred expense, lost money and business, and was forced to become a voluntary bankrupt about one month after the new car came on the market. *There is no plea that the contract was ever canceled or broken by defendant, and the whole context shows it was not; nor that there was ever a time that bankrupt could not buy from defendant all of the trucks and parts and all of the Model A cars and parts that it needed and desired.* True plaintiff says "production of Model A cars ceased in August, 1931"; but he nowhere says he could not get them after that time. In his second amended petition (at which we cannot forbear glancing) he says bankrupt could get them, by saying that no products were available for sale after November 1, 1931, "except trucks and * * * except Model A cars." But the gravamen of his petition is that bankrupt could not get the proposed and promised new car on September 10, 1931, and for lack of it incurred large expenses and losses and was forced into bankruptcy by reason of the statements of said Brown; for recoupment of which by way of damages he prays judgment.

So, nothing is clearer we think than that, as the contract was neither broken nor canceled by defendant, the sole charged offense of the latter is that its manager Brown made the false statements and misrepresentations to bankrupt that the new Ford automobile of defendant would be on the market September 10, 1931, and that he later reiterated these statements for divers other dates, and that this car did not come on the market till June, 1932. Touching these statements of Brown, plaintiff avers that they were *"false to the knowledge of the said defendant, or were made recklessly, it knowing at the time of the making of said representations that the new model car would not and could not be made ready for delivery within the times represented."* (Italics ours.)

Obviously, we think the above language, aside even from the quoted characterization of his petition by plaintiff's counsel in his brief, allocates the action among suits for fraud and deceit. Therefore the question is simply whether the language above-quoted is under the Missouri rule sufficient to set out a cause of action for fraud and deceit. We are constrained to the view that it is not.

The fairly recent case of Remmers v. Remmers, 217 Mo. 541, loc. cit. 557, 117 S.W. 1117, 1121, lays down the constituent elements of a sufficient allegation of fraud and deceit thus: "It is essential, to state a cause of action of that character [deceit], to aver that such representations were false and so known to be by the defendant, and that such representations were made with the intention of deceiving plaintiff, and that plaintiff was deceived thereby, and, relying upon such promises and representations, he was induced to act to his injury." Many other Missouri cases are to be found which give unmodified adherence to the above-quoted rule. Gockel v. Gockel (Mo.Sup.) 66 S.W.(2d) 867, 92 A.L.R. 784; Barrie v. United Railways Co., 138 Mo.App. 557, 119 S.W. 1020.

Plaintiff in the petition under inquiry does not aver that the alleged false representations were made with the intention of deceiving bankrupt, or that they were made without any intention of performance. If they were not, then, of course, they fall into the category of mere promises touching future events. Fraudulent misrepresentations ordinarily must be, in order to be actionable, representations as to past or existing facts, and not statements as to what will occur in the future. We think the whole context of the petition and the whole situation which it attempts to picture indicate quite conclusively that the representations made were not made with any intent to deceive the bankrupt, but that they were made as to a situation which Brown firmly believed would come to pass. Cases urged upon our attention such as Wendell v. Ozark Orchard Co. (Mo.App.) 200 S.W. 747, loc. cit. 749, and Stonemets v. Head, 248 Mo. 243, 154 S.W. 108, are obviously cases involving not only a prophecy for the future, but statements as to both a past and existing situation known to the speaker from past and present observation and experience. For when one says of a farm he has long owned and cultivated, and which he is trying to sell to another, that such farm has a crop producing and fertile soil adapted to the large and profitable production of grain and fruit, at the same time knowing from past observation and experience that it will not grow ragweeds, he is guilty of a false statement as to both past and existing facts. But likewise, obviously, the decisive question in the above cases is not the decisive question here, which, as said already, consists in the failure of the pleader to aver that Brown made the alleged false representations with the intent to deceive the bankrupt without any intent to perform, and that bankrupt was deceived. Both allegation and proof of this fact are prerequisites to a recovery in a case of fraud and deceit. Nor does the case of Philadelphia Storage Battery Co. v. Kelley-How-Thomson Co. (C.C.A.) 64 F.(2d) 834, herein much relied on, at all aid plaintiff; but as we read it, it reiterates the necessity for the presence of two constituent elements nowhere pleaded in the petition before us, for it says: "Promises and representations regarding future events, *made with fraudulent intent to deceive, and without any intent to perform,* are actionable." (Italics ours.)

Nowhere in this petition can there be found any allegation that the false representations were made by Brown with the intent to deceive the bankrupt, or that Brown did not intend that his principal, the defendant, should perform.

If the petition shall be considered as an action based on a breach of a written contract, of which it bears some earmarks, then plaintiff fares no better. For the

contract of which only a fragment is set out in the petition does not, we repeat, bind the defendant to sell any given number of cars, trucks, or parts thereof to the bankrupt, nor does it fix any period whatever to its duration. In these respects it is difficult to distinguish the contract in the case at bar from those held unenforceable in the cases of Ford Motor Co. v. Kirkmyer Motor Co. (C.C.A.) 65 F.(2d) 1001; Huffman v. Motor Car Co. (C.C.A.) 262 F. 116; Nebraska Aircraft Corp. v. Varney (C.C.A.) 282 F. 608; Du Pont De Nemours & Co. v. Claiborne-Reno Co. (C.C.A.) 64 F.(2d) 224, 89 A.L.R. 238; Chevrolet Motor Co. v. McCullough Motor Co. (C.C.A.) 6 F.(2d) 212; Ford Motor Co. v. Maddox Motor Co., 123 Tex. 608, 73 S.W.(2d) 517. Indeed a mere glance at the four petitions and the exhibits thereto, which being printed in the record we should be allowed to read, as a basis for the prediction, even off the record, confirms the view, that when all of the facts shall have been developed before a court on a trial on the merits, recovery by plaintiff on the law, and the facts now visible and pleaded is not possible.

This may under the facts involve a hardship, but the time to guard against such hardships is when men make improvident contracts, and not when such contracts come before the courts. This thought was well expressed by Judge Parker in the late case of Ford Motor Co. v. Kirkmyer Motor Co., supra, 65 F.(2d) 1001, at page 1006, wherein he says:

"It appears that plaintiff has been disappointed in its expectations and has been dealt with none too generously by the defendant; but, while we sympathize with its plight, we cannot say from the evidence before us that there has been a breach of binding contract which would enable it to recover damages. While there is a natural impulse to be impatient with a form of contract which places the comparatively helpless dealer at the mercy of the manufacturer, we cannot make contracts for parties or protect them from the provisions of contracts which they have made for themselves. Dealers doubtless accept these one sided contracts because they think that the right to deal in the product of the manufacturer, even on his terms, is valuable to them; but, after they have made such contracts, relying upon the good faith of the manufacturer for the protection which the contracts do not give, they cannot, when they get into trouble, expect the courts to place in the contracts the protection which they themselves have failed to insert."

It follows from what is said that no error was committed by the trial court in sustaining the demurrer to plaintiff's third amended petition, and therefore the case should be affirmed with costs, which accordingly is ordered.