[No. 33338.   Department Two.   December 22, 1955.]

F. M. Cooper, *Appellant,* v. L. J. Runnels *et al.,*
*Respondents.*[1]

[1]Reported in 291 P. (2d) 657.

*D. V. Morthland, Norman R. Nashem, Jr.,* and *Robert A. Felthous,* for appellant.

*Wettrick, Flood, O'Brien, Toulouse & Lirhus,* for respondents.

WEAVER, J.—Can a tort claim for damage to property be assigned?

Plaintiff's complaint alleges:

"2. That between the 10th and 16th days of March, 1954, the Defendants were spray painting a large water tower and tank of the City of Toppenish, Washington, said Defendant Company having during all of said times exclusive control over all of said spray painting operations. That said spray painting operations were so negligently and carelessly conducted as to deposit paint on the hereinafter mentioned vehicle or vehicles.

"3. That by reason of said negligence and carelessness and as a proximate cause thereof, paint was at said time deposited upon the automobile of Plaintiff; that as a result said automobile was damaged so that the reasonable market value thereof was $10.30 less immediately after the deposit of said spray paint than before, all to his damage in said amount."

Plaintiff's second through the ninety-second causes of action allege similar damage to one hundred thirty-seven automobiles owned by ninety-one different individuals. The alleged claims, totaling $3,978.55, were assigned to plaintiff.

The trial court sustained defendants' demurrer to all of plaintiff's causes of action except the first, on the ground that the alleged claims are nonassignable. Plaintiff appeals from a judgment dismissing all but his first cause of action.

We have concluded that a tort claim for damage to property is assignable under the law of this state. Therefore, it was error to sustain the demurrer and to dismiss the causes of action to which the demurrer was directed.

Our conclusion is based upon the following analysis:

■ The test of assignability is: Does the cause of action survive to the personal representative of the assignor? If it does, the cause of action is assignable. *Slauson v. Schwabacher Bros. & Co.*, 4 Wash. 783, 31 Pac. 329 (1892).

When property is damaged by a tort-feasor, and either or both the property owner and the tort-feasor die, three closely related questions may arise. First: Can the personal representative of the property owner maintain an action against the tort-feasor? Second: Can the property owner maintain an action against the personal representative of the tort-feasor? Third: Can the personal representative of the property owner maintain an action against the personal representative of the tort-feasor?

The immediate problem before us is a narrow one. It is confined to the first situation, for, if the cause of action can be maintained against the tort-feasor by the personal representatives of the property owners, then their assignments to the plaintiff are valid.

At the early common law, a cause of action did not survive to the personal representative of the owner of damaged property; hence, it was not assignable by him during his lifetime.

At least two reasons have been advanced in support of this conclusion. In the Anglo-Saxon period, and for at least the first two and a half centuries after the Conquest, there was no such thing as a general representative of a deceased person. 3 Holdsworth's History of English Law (6th ed. Rev.) 572. Later, when executors were recognized, both the extent of their right to sue and the extent of their liability were affected by the maxim, "A personal action dies with the person." (*Actio personalis moritur cum persona.*)

Professor Goudy said:

"Though this is one of the most familiar maxims of English law, the veil of obscurity covers not only its origin but its true import and significance." Goudy, Essays in Legal History (1913) 216-227.

The best conjecture on the subject is that it was a result of the development of the tort remedy as an adjunct of

criminal punishment. The principle developed at a time when many acts of human conduct were held to be felonies for which the wrongdoer forfeited all of his property and frequently his head. Death of the wrongdoer ended criminal responsibility; and, his property having been forfeited by reason of his felonious conduct, the establishment of tort liability became a useless gesture. No distinction was made between death of the owner of the damaged property and death of the wrongdoer, although the reason for denying survival of the action to the *plaintiff's* successors against a still living defendant is not so strong. Whatever the explanation, the rule became settled.

Gradually, the power of the executor was extended. From the reign of Edward I, the executor could sue in debt or detinue, the first action based upon contractual or quasi-contractual rights; the second, upon the theory of unjust enrichment. Detinue could also be maintained against the executor of a deceased wrongdoer on the theory that an obligation to restore property did not die with the person.

In 1330, a statute was passed allowing the executor to sue for trespasses done to the goods and chattels of his testator. It was known as the statute "*de bonis asportatis in vita testatoris*" and read as follows:

"ITEM, Whereas in Times past Executors have not had Actions for a Trespass done to their Testators, as of the Goods and Chattels of the same Testators carried away in their Life, and so such Trepasses have hitherto remained unpunished; (2) it is enacted, That the Executors in such Cases shall have an Action against the Trespassers, and recover their Damages in like Manner, as they, whose Executors they be, should have had if they were in Life." 4 Edw. III, chapter 7 (1330).

Of this statute, Holdsworth said that it

". . . eventually gave him [the executor] the right to bring either detinue, trespass, trespass on the case, or trover in appropriate cases in respect of different wrongs to these goods and chattels." 3 Holdsworth's History of English Law (6th ed. Rev.) 584.

In *Wilson v. Knubley*, 7 East 128, 103 Eng. Rep. 49 (1806),

Lord Ellenborough C.J. discussed 4 Edward III, chapter 7. He said:

"It speaks of a trespass as of a wrong generally; and it enacts, that the executors shall have an action, *not saying what form of action,* against the trespassers, meaning thereby wrong-doers." (Italics ours.) (p. 52)

The common law of England, including the English statutes in force at the date of the Declaration of Independence, continues to be the law of this state except as it is inconsistent with state and Federal constitutions, or incompatible with the institutions and society of this state, or modified by statute. RCW 1.12.030; RCW 4.04.010; *In re Hudson,* 13 Wn. (2d) 673, 684, 126 P. (2d) 765 (1942) and cases cited.

In order to determine whether the common law has been modified in this jurisdiction, we turn to our statutes.

RCW 4.20.040 provides:

"All causes of action other than those enumerated in RCW 4.20.010 [involving right of action for wrongful death], by one person against another, whether arising on contract or otherwise, survive to the personal representatives of the former and against the personal representatives of the latter. Where the cause of action survives, as herein provided, the executors or administrators may maintain an action at law thereon against the party against whom the cause of action accrued, or after his death, against his personal representatives."

Defendants in the instant case argue that this statute, passed in 1869 (Laws of 1869, § 659, p. 165), limits survival of causes of action to those whose survival had already been defined by *previous statutes* of this state.

We cannot agree. On several occasions, we have pointed out that this statute (now designated as RCW 4.20.040) does not attempt to announce what causes of action *should* survive, but refers only to those causes of action which *already* survive. *Slauson v. Schwabacher Bros. & Co.,* 4 Wash. 783, 31 Pac. 329 (1892); *Jones v. Miller,* 35 Wash. 499, 77 Pac. 811 (1904); *Rinker v. Hurd,* 69 Wash.

257, 124 Pac. 687 (1912); *State ex rel. Baeder v. Blake,* 107 Wash. 294, 181 Pac. 685 (1919).

▆▆ Consideration of these decisions leads us to conclude that those causes of action which survive at common law survive in this jurisdiction, unless prohibited by statute. *Warner v. Benham,* 126 Wash. 393, 218 Pac. 260 (1923). Our conclusion is buttressed by the fact that this court has already recognized the statute of 4 Edward III, chapter 7, quoted *supra,* as part of the common law of this state. *Boyd v. Sibold,* 7 Wn. (2d) 279, 285, 109 P. (2d) 535 (1941); see *State ex rel. Baeder v. Blake, supra,* wherein the statute was recognized "for the purposes of this opinion."

RCW 11.48.100 provides:

"Executors and administrators may maintain actions against any person who *has* [shall have] wasted, destroyed, taken, carried away, or converted to his own use the goods of their testator or intestate in his lifetime. *They* may also maintain actions for trespass committed on the estate of the deceased during his lifetime." (Bracketed words omitted and italicized words inserted by codifiers; *cf.* Laws of 1917, chapter 156, § 149; Code of 1881, § 1530.)

RCW 11.48.100 was first passed in 1854. Laws of 1854, § 143, p. 291; Code of 1881, § 1530. It was re-enacted as part of the probate code in 1917, Laws of 1917, chapter 156, § 149, p. 685. The similarity of our present statute to that of 4 Edward III, chapter 7 (1330) is apparent.

In several of our former decisions, we have alluded to the precise problem we are now considering—the right to assign a cause of action for damage to property, or the parallel question of whether a right of action for damage to property survives to the personal representative of the property owner.

In *Slauson v. Schwabacher Bros. & Co.,* 4 Wash. 783, 31 Pac. 329 (1892), plaintiff, as assignee of an insolvent, was permitted to recover damages for the assignor for perishable goods destroyed by reason of a wrongful attachment. He appealed to this court because he was not permitted to prove certain consequential damages alleged to have been suffered by reason of the wrongful attachment. The judg-

ment was affirmed. There was no cross-appeal from the judgment rendered for damage to the .property, although the court discussed the general problem at some length.

In *Jordan v. Welch*, 61 Wash. 569, 112 Pac. 656 (1911), plaintiff sued for damage to his real property caused by defendant's negligence in permitting a fire to spread onto his land. He also sued upon "an assigned claim of damage to the lands of John Taylor, burned in the same fire." Defendant contended that the claim for damages was not assignable, as it rested in tort.

Relying upon the discussion of this problem in the *Slauson* case, *supra*, but without referring to the statute involved, this court said:

"It would hardly be contended that the cause of action for damage to the Taylor lands did not survive. It was, therefore, a proper assignment, and it was not error to so hold."

In *Seward v. Spokane, Portland & Seattle R. Co.*, 64 Wash. 516, 117 Pac. 263 (1911), an administrator was permitted to sue for damages resulting from a trespass to the real property of decedent and occurring prior to the owner's death. The decision is based upon Rem. & Bal. Code, § 1536, which now appears as RCW 11.48.100.

In *Polk v. Spokane Interstate Fair*, 73 Wash. 610, 614, 132 Pac. 401 (1913), plaintiff sued in his own behalf, and also as assignee, for the destruction of two race horses and other property as a result of defendant's negligence. This court specifically upheld the assignment without discussion. The case was reversed on other grounds.

In *Yamamoto v. Puget Sound Lbr. Co.*, 84 Wash. 411, 146 Pac. 861 (1915), the plaintiff maintained an action on several assigned claims for the destruction of personal property by fire. The assignments were upheld.

In *Boyd v. Sibold*, 7 Wn. (2d) 279, 109 P. (2d) 535 (1941), plaintiff sued for general damages in the sum of twenty thousand dollars, which included hospital bills, doctor bills, loss of wages, and $275 for damage to his automobile. Plaintiff died pending trial, and his executrix was substi-

tuted as party plaintiff. The executrix appealed from a judgment of the trial court which allowed her recovery only for damage to the automobile, since it was the only cause of action which survived the death of the deceased plaintiff. *There was no appeal from the allowance of damage for the automobile,* so, in this respect, the facts are parallel to those of the *Slauson* case, *supra.*

This court affirmed the trial court on the grounds that plaintiff's claim, except for damage to the automobile, neither survived to his executrix at the common law nor survived by reason of RCW 11.48.100 (Rem. Rev. Stat., § 1519). The court concluded

". . . that the only recovery to which appellant is entitled, is for the damage to the automobile of the deceased; in other words, that, being a direct damage to personal property of the estate, constituted a trespass committed on the estate of Mr. Boyd during his lifetime." (p. 292)

Defendants argue that the portion of the *Boyd* case, *supra,* which holds that the cause of action survives for damage to the automobile is *dictum.* If such it be, we now adopt the reasoning of the *Boyd* case as the reasoning of our decision in the instant case.

The many cases which defendants (respondents) cite in support of the judgment of the trial court are distinguished by the fact that they do not treat with "actions for trespass committed on the estate of the deceased during his lifetime." They treat with purely personal wrongs which survive neither by reason of the statute nor at common law.

RCW 11.48.110 provides:

"Any person, or his personal representatives, shall have an action against the executor or administrator of any estate or intestate who in his lifetime wasted, destroyed, took, or carried away, or converted to his own use, the goods and chattels of any such person, or committed any trespass on the real estate of such person."

It will be noted that the only substantial difference between RCW 11.48.100 and RCW 11.48.110 (other than the fact that the first relates to survival *in favor of* a personal

representative, and the second *against* the personal representative) is that in the latter the word "real" appears before the word "estate."

We do not agree that we should construe the word "real" into RCW 11.48.100. To do so would change the entire meaning of the statute, which has existed in its present form since 1854. In *Boyd v. Sibold, supra,* we considered the sense in which the word "estate" was used in RCW 11-.48.100 and said

". . . that 'estate' refers to real and *personal* property having a physical objective existence." (Italics ours.) (p. 288)

It was pointed out in 1941 by the author of the dissenting opinion in *Boyd v. Sibold, supra,* that RCW 11.48.100 may allow a recovery by a personal representative on a broader basis than RCW 11.48.110 permits *against* a personal representative; but "that is a matter for legislative determination." (p. 293)

Defendants (respondents) cite *Barnum v. Jackson,* 165 Wash. 347, 5 P. (2d) 497 (1931) and *West Coast Transport Co. v. Landin,* 187 Wash. 556, 60 P. (2d) 704 (1936), for the proposition that the causes of action do not survive (and are not assignable) because the property was not "destroyed" within the meaning of the statute.

Neither of the cited cases are apposite to the instant case. Both present the question of the extent of recovery *against* a personal representative of a deceased tort-feasor and are based upon an interpretation of RCW 11.48.110, which has no application to the present case, a distinction noted by the court in *Barnum v. Jackson, supra.*

Defendants' contention that there is a misjoinder of causes of action is not well taken.

The judgment of dismissal is reversed with instructions to enter an order overruling defendants' demurrer. Costs of this appeal shall abide the final disposition of this action.

HAMLEY, C. J., MALLERY, HILL, and ROSELLINI, JJ., concur.