Elaine ROSENBERG and Micheline Nanette Sinclair, Plaintiffs,

v.

SEATTLE ART MUSEUM, Defendant and Third–Party Plaintiff,

v.

Knoedler–Modarco, Inc., Third–Party Defendant.

No. C98–1073L.

United States District Court, W.D. Washington, at Seattle.

Oct. 7, 1999.

Camden M Hall, Foster Pepper & Shefelman, Seattle, WA, Andrew M Dansicker, Laura B Hoguet, Hoguet Newman & Regal, New York, NY, for Elaine Rosenberg, Micheline Nanette Sinclair, plaintiffs.

Stuart R. Dunwoody, John Alan Reed, Jessica L Goldman, Davis Wright Tremaine LLP, Seattle, WA, for Seattle Art Museum, defendants.

Timothy G Fielden, Michael B Rodden, Stoel Rives LLP, Seattle, WA, Sara Goldberg, Lewis R Clayton, Daniel Leffell, Marc Falcone, Steven Rawlings, Paul Weiss Rifkind Wharton & Garrison, New York, NY, for Knoedler–Modarco Inc, third-party defendants.

## ORDER GRANTING SUMMARY JUDGMENT AND DISMISSAL

LASNIK, District Judge.

Third–Party Defendant Knoedler–Modarco, Inc., moves the Court for summary judgment against Third–Party Plaintiff Seattle Art Museum (SAM) on its claim of fraud, and moves for dismissal of SAM's other claims for lack of personal jurisdiction. Having considered the materials filed in support and opposition, the Court hereby grants partial summary judgment and dismisses this case.

The facts of the case are well known. *See, e.g., Rosenberg v. Seattle Art Museum,* 42 F.Supp.2d 1029, 1031–32 (W.D.Wash.1999). A 1928 painting by Henri Matisse, known as "L'Odalisque," was purchased by Virginia and Prentice Bloedel from Knoedler in 1954. In 1991, the Bloedels gave the painting to SAM, L'Odalisque, it now appears, was stolen by German Nazis from French art collector Paul Rosenberg during World War II. Rosenberg's heirs discovered the whereabouts of L'Odalisque and filed this suit against SAM for its return. SAM, in turn, sued the Knoedler gallery for breach of title, fraud, and negligent misrepresentation. SAM has agreed that the Rosenberg heirs are the rightful owners of the painting and have given it to them. The question remaining is who in L'Odalisque's postwar chain of possession will suffer the loss.

SAM claims Knoedler defrauded the Bloedels when it sold them the painting in 1954, by lying to them about the painting's provenance, or chain of title. SAM presents evidence that Knoedler knew that the painting belonged to Rosenberg, but assured the Bloedels that Knoedler had good title to it. Knoedler argues on this motion that SAM cannot prove this claim, and that if this claim is dismissed, its other claims should also be dismissed because the Court would lack personal jurisdiction over Knoedler.

Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party bears the burden of establishing that it is entitled to summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In assessing whether a party has met this burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Tzung v. State Farm Fire & Casualty Co.,* 873 F.2d 1338, 1339–40 (9th Cir.1989). If the moving party meets its burden, the nonmoving party must present evidence that creates a genuine issue of material fact. Fed.R.Civ.P. 56(e). "Material facts" are those that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" exists if there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249, 106 S.Ct. 2505 (citations omitted).

■ Establishing fraud requires clear and convincing proof of nine elements:

(1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of the falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff.

*Stiley v. Block,* 130 Wash.2d 486, 505, 925 P.2d 194 (1996). Knoedler argues that it made no representation regarding L'Odalisque's title; that neither the Bloedels nor SAM relied upon, or had a right to rely upon, any such representation; and that Knoedler did not intend the Bloedels or SAM to rely upon any such representation.

██ If it were necessary to resolve this motion, the Court would find SAM has presented sufficient evidence of fraud to avoid summary judgment. Looking at the evidence in a light most favorable to SAM, the letter written by Knoedler's Lelia Wittler to Virginia Bloedel on December 21, 1954, touches on L'Odalisque's title, and appears to be a response to an inquiry about title by the Bloedels.[1] Combined with evidence that Knoedler possessed information that showed that the painting belonged to Paul Rosenberg before World War II, and that much of Rosenberg's collection had been looted during the Nazi occupation of Paris, there is a genuine dispute whether Knoedler defrauded the Bloedels.[2]

██ However, SAM presents no evidence that Knoedler defrauded the museum. In particular, there is no evidence SAM relied upon anything Knoedler ever said about L'Odalisque's title. Therefore, the question is whether SAM has the right to recover for an alleged fraud upon the Bloedels. Knoedler claims that this right can never be asserted by a third party, but this is incorrect. *See Harvey v. Cleman,* 65 Wash.2d 853, 857–58, 400 P.2d 87 (1965) ("all causes of action" survive death since passage of RCW 4.20.046, and thus are assignable)[3]; *cf. White v. Johns–Manville Corp.,* 103 Wash.2d 344, 359, 693 P.2d 687 (1985) (even the decedent's causes of action which have not yet accrued under the discovery rule survive to his personal representative). The question remains whether *SAM* somehow obtained that right. The survival-of-rights statute, RCW 4.20.046, is unavailing, because it says the rights of a deceased pass to his or her personal representatives, and SAM is certainly not a personal representative of either of the Bloedels.

██ Instead, SAM argues that the Bloedels' right to sue Knoedler for fraud was intended to be assigned to SAM, and that this intent may be expressed after the Bloedels' death by way of an agreement between their heirs. SAM presents this agreement under the authority of RCW 11.96.170. This statute, by SAM's own reading, allows the parties to a dispute

---

1. The letter reads in substance as follows:

   I am sorry there was any question left unanswered in your mind, but the thing was so clear to us although we do not know the name of the former owner. The Paris dealer from whom we bought the Matisse would not give out the name of the former owner, as they always hoped to get more pictures from the same source.

   This picture, as you know, was painted in 1928 and was exhibited at the Salon des Tuileries that same year; and in 1937 it was exhibited in the Independent show when it was loaned by the artist. In 1938 he again exhibited it in the International Exhibition at Carnegie Institute in Pittsburgh. It was without doubt in his possession through 1938. As it was published in a Swedish publication in 1938, it may have gone to Sweden and was in some Swedish collection. However, from then on it was owned privately by this collection, from which it now comes, and whose identity we are unable to get from the Paris dealer. The document, of which you have a photostat, comes directly from Madame Matisse, which leaves, of course, no doubt as to the authenticity of the picture. I think possibly Dr. Fuller would be interested to see the pedigree of the picture, and also the document.

   Fielden Dec. Ex. F.

2. While SAM's strong advocacy of its position is understandable, the Court is very aware of how difficult it is to determine what really happened 45 years ago, since all the participants are deceased. Indeed, one can imagine an observer in 2041 persuasively arguing that SAM must have known L'Odalisque was a stolen painting some time in the mid–1990s, particularly after the appearance of Hector Feliciano's book identifying the painting as missing. *See* HECTOR FELICIANO, THE LOST MUSEUM: THE NAZI CONSPIRACY TO STEAL THE WORLD'S GREATEST WORKS OF ART (Tim Bent & Hector Feliciano trans., English trans. & updated ed.1997) (1995).

3. The rule that assignability of rights depended on their survivability pre-dated the legislature's adoption of RCW 4.20.046. *See Cooper v. Runnels,* 48 Wash.2d 108, 110, 291 P.2d 657 (1955). The fact that the statute provides that all causes of action survive death has not changed the rule, according to *Harvey.*

arising in the administration of the Bloedels' estate to resolve such dispute by written agreement. *See* RCW 11.96.170(6)(a), 11.96.070(1)(c). The dispute at issue here, however, did not arise "in the administration of" the Bloedels' estate. This dispute has arisen only after the disposition of the estate property, L'Odalisque, and does not concern the Bloedel estate in any legal sense. Thus, the Court agrees with Knoedler that the agreement is merely a "collusive modification of a trust or will," and cannot be used in the manner attempted.

In the absence of any other basis upon which SAM may be entitled to assert the rights of the Bloedels in tort,[4] the Court must grant Knoedler's motion for summary judgment.[5]

■ SAM says that if the Court dismisses its fraud claim, it should nonetheless retain jurisdiction over its remaining claims of negligent misrepresentation and breach of implied warranties. In its March order on personal jurisdiction, the Court found that the latter claim, sounding in contract, is properly before the Court only if the Court has personal jurisdiction over Knoedler through some other claim. *See Rosenberg*, 42 F.Supp.2d at 1036, 1037–38. The Court suggested the same was true of SAM's negligent misrepresentation claim, and in conclusion said that if Knoedler convinced the Court "that SAM's intentional tort claim fails as a matter of law, ... there would be no justification for retaining jurisdiction over the remaining claims." *Id.* at 1038; *see also id.* at 1037 & n. 8. SAM argues this was erroneous, and that the Court has independent jurisdiction over Knoedler by way of negligent misrepresentation. The cases cited by SAM to say that the effects test applies to claims of negligence are of debatable value; *Taylor v. Phelan*, 912 F.2d 429, 433 (10th Cir.1990) involved negligent conduct by the foreign defendant *within* the forum state, and *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 259 (11th Cir.1996) involved an extensive business relationship between the plaintiff and the foreign defendants.

Regardless, since SAM does not have standing to sue Knoedler for defrauding the Bloedels, it would not have standing to assert negligent misrepresentation in the same context.

Accordingly, Knoedler's motion for partial summary judgment and dismissal is GRANTED, and this case is ordered DISMISSED. Seattle Art Museum's motion to compel is STRICKEN as moot.

The Clerk of the Court is directed to send copies of this order to all counsel of record.

---

4. At oral argument, counsel for SAM suggested that the Bloedels' personal representatives could simply assign the cause of action for fraud, today, to SAM. Under the unique circumstances of this case, it is unclear whether this would be effective, but the Court expresses no opinion on the matter by this order.

5. In the last sentence of its brief in opposition to summary judgment, SAM requests in the alternative a continuance to seek further jurisdictional discovery. In light of the fact that the basis of the Court's dismissal—succession to the Bloedels' rights—involves facts that are not in Knoedler's possession, the Court denies this request.