[No. 28129. *En Banc.* January 27, 1941.]

BLANCHE BOYD, *as Executrix, Appellant,* v. VINCENT G. SIBOLD *et al., Respondents.*[1]

[1]Reported in 109 P. (2d) 535.

*Wright & Wright,* for appellant.

*Bogle, Bogle & Gates* and *George T. Nickell,* for respondents.

JEFFERS, J.—James Boyd, now deceased, in his lifetime instituted this action to recover damages from Vincent G. Sibold and wife and their minor son, Gene Sibold, for personal injuries and damages to an automobile, claimed to have been sustained by plaintiff as the result of a collision between a car driven by plaintiff and a car driven by Gene Sibold, being operated at the time as a family car, for the use and benefit of the community composed of Mr. and Mrs. Sibold. Plaintiff asked for general damages in the sum of twenty thousand dollars, which included $144.45 hospital bill, $500 for doctors' bills and loss of wages, and $275 for damage to the car.

Defendants answered the complaint, denying all allegations of negligence, and setting up certain affirmative defenses.

On October 23, 1939, Vincent Sibold, the father, was appointed guardian *ad litem* for Gene Sibold. On April 9, 1940, it having been brought to the attention of the court that plaintiff, James Boyd, had died on January 30, 1940, and that Blanche Boyd had been appointed executrix of his estate, an order was made and entered substituting Blanche Boyd, executrix of the estate of James Boyd, deceased, as party plaintiff in this action.

Thereafter, the matter came on for hearing before the court, sitting without a jury, the defendants not being represented by counsel, but by Vincent Sibold, one of the defendants, and the court having heard the evidence and argument of counsel, on April 29, 1940, made and entered findings of fact, conclusions of

law, and judgment. Blanche Boyd, as executrix, has appealed from the judgment entered.

Appellant contends the court erred in making, signing, and entering its conclusion of law No. 1, because after having found as a fact that there was "a total loss to the said James Boyd and to his estate in the sum of $1,644.45," it then concluded as a matter of law that appellant was limited in her recovery to the damage to the automobile, fixed in the sum of $250. It is also contended that the court erred in entering judgment for appellant in the sum of only $250, instead of $1,644.45.

No statement of facts or bill of exceptions has been certified in this case.

It appears that on April 10, 1940, counsel now appearing for respondents gave notice of their appearance in the case. This was after the trial court had orally announced that it would give judgment for appellant in the sum of $1,644.45, consisting of $144.45 hospital bills, $500 doctors' bills, $250 damages to automobile, $250 for lost wages, and $500 for pain and suffering. Before the findings, conclusion, and judgment in accordance with the above oral announcement of the trial court were presented, counsel for respondents moved the court for judgment notwithstanding the oral decision of the court, on the ground that, James Boyd having died on January 30, 1940, the alleged cause of action against respondents had abated. While the trial court denied respondents' motion, it is apparent from the conclusion of law and judgment entered, that the court concluded appellant was entitled to recover in this action only for the damage done to the Boyd automobile, notwithstanding that the court found the negligence of Gene Sibold was the proximate cause of James Boyd's injuries and the consequential loss to the estate resulting therefrom.

The following findings of fact, which are the only ones material to the issues raised herein, were entered by the trial court:

"VI. That the plaintiff now deceased, James Boyd, was permanently injured in this: That he received a fracture of the lower end of the left knee cap, with the smaller fragments broken up into numerous small pieces, necessitating his having a very serious operation, from which, however, he did recover 80 percent, being therefore permanently injured 20 percent. That he was confined in the hospital for a period of some time, and afterwards at his home. That he incurred hospital bills in the sum of $144.45, and doctors' bills in the sum of $500.00. That his automobile was damaged in the amount of $250.00. That he suffered lost wages in the sum of $250.00 and that he suffered excruciating pain and agony which the court finds to be in the sum of $500.00, a total loss to the said James Boyd and to his estate in the sum of $1644.45.

"VII. That the said James Boyd was in nowise negligent; that he had the right of way and not the defendant Gene Sibold; that the proximate cause of the injury was the negligence of the defendant Gene Sibold and not of the deceased, James Boyd."

From the findings of fact, the court concluded:

"I. That the plaintiff, as executrix of the estate of James Boyd, deceased, is not entitled to recover any of the enumerated items of damage to this estate, except the damage to the automobile in the sum of $250.00; the law governing the cause not permitting a recovery in behalf of the estate of James Boyd for any of the items other than $250.00, which was the damage to the car, to which the plaintiff excepts, and exceptions allowed."

Judgment was entered in accordance with the conclusion of law.

It is admitted that James Boyd did not die as the result of injuries received in the collision, and that this is not an action for wrongful death.

The question presented is whether or not a right of action survived to the executrix of the estate of James Boyd, deceased, whereby such executrix was entitled to prosecute this action and recover against respondents for all or any of the items set out in findings of fact Nos. 6 and 7, and whether or not the trial court was bound to conclude that appellant was entitled to judgment for all of such items.

Counsel for appellant refer to Rem. Rev. Stat., §§ 183, 183-1, and 194 [P. C. §§ 8259, 8260, 8275], commonly known as the wrongful death statutes, and state that they are not applicable herein. Counsel for appellant also state that Rem. Rev. Stat., §§ 193 and 967 [P. C. §§ 8274, 7961], are not applicable or helpful herein, because of the construction placed on such statutes in *Slauson v. Schwabacher,* 4 Wash. 783, 31 Pac. 329, 31 Am. St. 948; *Jones v. Miller,* 35 Wash. 499, 77 Pac. 811; and *State ex rel. Baeder v. Blake,* 107 Wash. 294, 181 Pac. 685. Appellant relies on Rem. Rev. Stat., § 1519 [P. C. § 9887], which reads as follows:

"Executors and administrators may maintain actions against any person who shall have wasted, destroyed, taken, carried away, or converted to his own use the goods of their testator or intestate in his lifetime; *also may maintain actions for trespass committed on the estate of the deceased during his lifetime.*" (Italics ours.)

Appellant contends that, not only under this statute, but as a principle under the common law, the amount which her deceased husband incurred and which his estate will be compelled to expend, because of his hospital bills in the sum of $144.45, doctors' bills in the sum of $500, and his lost wages in the sum of $250, not only affects his estate, but constitutes "trespass committed on the estate of the deceased during his lifetime," and that respondents are liable

therefor. Appellant admits that, under the authority of *Arsnow v. Red Top Cab Co.*, 159 Wash. 137, 292 Pac. 436, she would not be entitled to recover the further sum of $500 for pain and suffering, were it not for the fact that the court found that all the items hereinbefore mentioned, including the sum of $500 for pain and suffering, resulted in a total loss to James Boyd, and to his estate.

We are satisfied that in no event is appellant entitled to recover the sum of $500 for pain and suffering. *Arsnow v. Red Top Cab Co., supra.* We are further satisfied that it does not follow, as contended by appellant, that the trial court was bound to conclude that respondents were liable for all the items set out in findings of fact Nos. 6 and 7, nor are we bound to so conclude, unless such conclusion is legally compelled from the facts found by the trial court.

It may be stated without fear of contradiction that the common law relative to survival of action prevails in this state, except where modified by statute.

In *State ex rel. Baeder v. Blake, supra,* in construing Rem. Rev. Stat., §§ 193 and 967, we stated that these statutes referred only to causes of action which survived at common law, and did not purport to announce what causes of action would survive. See, also, *Slauson v. Schwabacher, supra; Jones v. Miller, supra; Rinker v. Hurd,* 69 Wash. 257, 124 Pac. 687; *Ingersoll v. Gourley,* 72 Wash. 462, 130 Pac. 743; and *Dyer v. Missouri State Life Ins. Co.,* 132 Wash. 378, 232 Pac. 346.

At common law, an action founded upon tort for unliquidated damages did not survive the death of the wrongdoer. *Bortle v. Osborne,* 155 Wash. 585, 285 Pac. 425, 67 A. L. R. 1152; *Compton v. Evans,* 200 Wash. 125, 93 P. (2d) 341.

In *Jones v. Miller, supra,* relief was denied to the

wife for the alleged unlawful mutilation and dishonor of the body of her deceased husband. We stated therein:

"At common law an action for an injury to the person, such as the one in question here, abated on the death of the person injured, and could not thereafter be revived by his heirs or personal representatives."

It is further contended by appellant that the legislature, in passing § 1519, *supra*, attempted to provide that, when any person, by tortious acts, caused damage to another *person* during his lifetime, which finally resulted in damage to his estate after his death, then the executor or administrator of such deceased might maintain an action for the *consequences* of such tortious acts; that, in effect, the legislature was adopting in substance old English statutes which had been passed to cover exactly the conditions found in the case at bar, citing Statutes of 4 Edw. III, chapter 7; 31 Edw. III, chapter 11; Statutes 3 and 4 Wm. IV, chapter 42, § 2.

It may be admitted that the common law of this state includes the statutes above referred to. *State ex rel. Baeder v. Blake, supra.* However, we are unable to see how they are of any help to appellant herein, other than as to a recovery for damage to the Boyd automobile. In the *Baeder* case, *supra*, referring to the English statutes, we stated:

"The statute first mentioned has no application here. The second statute provided that an action could be maintained against the executors or administrators of a person deceased for any wrong committed by him in his lifetime to another in respect to his property, *real or personal.* Statutes, alike in terms or substance, have been enacted in a number of states in this country. The courts of England and the courts of the various states where like or similar statutes exist

have uniformly construed them as applying *only* to damages done to some *specific real or personal estate* of which one may be the owner, and that they do not apply to a mere fraud or cheat by which one sustains a pecuniary loss, as this is not damage done to a personal estate." (Italics ours.)

The above cited English statutes are referred to in 1 Am. Jur., subject "Abatement and Revival," p. 73, § 88, wherein we find the following statement:

"By the early English statutes of 4 Edw. III. chap. 7, and 31 Edw. III. chap. 11, which constitute a part of the common law in the United States, the rule of the common law that all actions in form ex delicto for the recovery of damages abate by the death of either party was so modified as to permit an action in favor of a personal representative for injuries to *personal property.* And by Stat. 3 & 4 Wm. IV. chap. 42, § 3 [§ 2 evidently intended], the common-law rule was further modified by allowing an action in favor of the personal representative for injuries to *real estate,* and against personal representatives for injuries to *real* or *personal property,* but none of these statutes changed the common-law rule as to injuries to the person." (Italics ours.)

In *Jones v. Matson,* 4 Wn. (2d) 659, 104 P. (2d) 591, we recognized that it was not entirely accurate to say that at common law a cause of action based upon tort died with the person, for in fact the common law recognized that where a cause of action, though nominally in tort, was founded on, or, as more commonly stated, connected with, contract, it survived. In the cited case, we also recognized that, where the estate of a deceased tort feasor was enriched by the acquisition of specific property, through the wrongful act of the deceased, a right of action survived against the personal representative of the wrongdoer. A good many of our cases are referred to and discussed in

the cited case, and we think no further discussion necessary at this time.

We have, as already stated, also recognized that the early common law has been modified by the English statutes hereinbefore referred to, to the extent of allowing an action in favor of a personal representative for injuries to personal and real property, and against a personal representative for injuries to real or personal property.

It must be admitted that the instant action is not based upon tort connected with contract; that no question of enrichment is involved; and that the only item for which recovery is sought, which involves a direct injury to specific real or personal property, is the damage to the automobile. We are satisfied, therefore, that at common law appellant would not have been able to recover for any of the items claimed, other than the damage to the automobile, and we are also satisfied appellant is not entitled to recover under any of our decisions or statutes, unless it be § 1519, *supra.*

It may be noted in passing that Rem. Rev. Stat., §§ 1519 and 1520, have been on the statute books since 1854. These same sections were reenacted as a part of the probate code of 1917.

We now desire to consider § 1519, *supra,* and particularly that part which states that executors and administrators of estates of deceased persons are empowered to maintain "actions for trespass committed on the estate of the deceased during his lifetime." In what sense were the words "trespass" and "estate" used therein?

In *Suter v. Wenatchee Water Power Co.,* 35 Wash. 1, 76 Pac. 298, 102 Am. St. 881, we quoted from *Roundtree v. Brantley,* 34 Ala. 544, 73 Am. Dec. 470, as follows:

" 'It is true that *trespass*, in one sense, means an injury or wrong; and, in that sense, it would include every cause of action, at least in tort. But trespass has in the law, a well ascertained and fixed meaning. It refers to injuries which are immediate, and not consequential. . . . It would be a perversion of language to dominate an act, which produced a consequential injury to real or personal property, a trespass.' "

Again in the cited case we quoted from *Hicks v. Drew,* 117 Cal. 305, 49 Pac. 189, as follows:

" 'One of the best tests by which to distinguish trespass is found in the answer to the question, When was the damage done? If the damage does not come directly from the act, but is simply an after result from the act, it is essentially consequential, and no trespass.' "

The opinion continues:

"We must, therefore, conclude that, when our law makers provided a three-year limitation for actions for 'trespass upon real property,' they meant to include only such recovery as could have been had through the action of trespass at common law."

1 Bouvier's Law Dictionary, 1075, defines "estate" as follows: "The condition or circumstances in which the owner stands with reference to his property."

15 Words and Phrases (Perm. ed.), 184 *et seq.,* gives a great many definitions of the word "estate," but the thought seems to run through all of them that "estate" refers to real and personal property having a physical objective existence. This we think is shown by the following definitions:

"A man's 'estate' is that which he can sell or dispose of at his pleasure or what he can pass on to another. *Howard v. Mitchell,* 105 S. W. (2d) 128, 133, 268 Ky. 429."

"The term 'estate,' when used in its broad sense, includes every species of property. *Lessler v. De Loynes,* 138 N. Y. S. 503, 505, 153 App. Div. 903."

"The word 'estate' has a variety of significations. It may mean the property of a living man, the property of a decedent, which passes to his administrator for the payment of debts of the community, or the property of a husband and wife of which the husband dies seised. . . . *West v. Herman,* 104 S. W. 428, 432, 47 Tex. Civ. App. 131."

In 21 C. J. 912, § 1, we find the following statement:

"As originally used the term [estate] signifies the condition or circumstance in which the owner stands with regard to his property; but it has been extended to indicate the property itself. While in its primary and technical sense the term 'estate' refers only to an interest in land, yet it has acquired a much wider import and application, being applied to all property of every description, including personal property as well as realty, and in its most extreme sense signifying everything of which riches or fortune may consist."

Appellant contends that survival statutes should be liberally construed. Assuming, without deciding, that this contention is correct, however, the rules of liberal construction do not contemplate that a statute shall be so interpreted as to make abortive the meaning of words therein employed.

We are of the opinion that the legislature, when using the words "trespass committed on the estate," in § 1519, *supra,* had in mind a direct damage or injury to physical property of the estate, and not to consequential loss which might result to the estate from trespass to the person, in his lifetime.

We are further of the opinion that the only direct damage to property of the estate in the instant case was the damage to the automobile, and that the hospital bills, doctors' bills, claim for lost wages, and claim for pain and suffering, were consequential damages flowing from the trespass or injury to the person of the deceased in his lifetime, for which no right of action

survived at common law, being purely personal to the deceased, and for which there is no recovery under § 1519, *supra.*

In so far as we have been able to discover, § 1519 has been expressly referred to in only one case, namely: *Seward v. Spokane, P. & S. R. Co.,* 64 Wash. 516, 117 Pac. 263, which involved an action brought by the plaintiff, as administrator of Orson M. Seward, to recover damages to real property of the deceased, which damage occurred during the lifetime of deceased. This court, in sustaining the right of the administrator to bring the action, relied upon Rem. & Bal. Code, § 1536, which is the same as Rem. Rev. Stat., § 1519, and held that there was a direct injury to real property, and the right of action survived.

While certainly it is not conclusive of the applicability of § 1519 to a situation such as here presented, we think it is quite significant that through the years this statute has been in the books, and in view of the number of cases before this court involving the survival of actions, the only time § 1519 has been cited is in the case last above mentioned, involving a direct damage to real property. It has never been contended that it applied to consequential damages, claimed to have resulted from a trespass or injury to the person in his lifetime.

Counsel for appellant call attention to the case of *Dyer v. Missouri State Life Ins. Co.,* 132 Wash. 378, 232 Pac. 346, and, while admitting that § 1519, *supra,* is not mentioned in that case, contend that the decision might well have rested on that statute. We referred to the cited case in *Jones v. Matson, supra,* and therein stated: "There is also a class of cases where an obligation is implied by statute arising out of relations between the parties." The opinion in the *Dyer* case concludes with these words: "This being an action based upon con-

tract, although sounding in tort, under the statute of this state, as well as at common law, survives." The cited case does not support appellant's contention.

Rem. Rev. Stat., § 1520 [P. C. § 9888], is cited by appellant, not as applicable herein, other than as indicating the intention of the legislature to broaden the scope of the common law as to the liability of a deceased tort feasor and his estate for wrongful acts of the deceased in his lifetime. The section provides:

"Any person, or his personal representatives, shall have an action against the executor or administrator of any estate or intestate who in his lifetime shall have wasted, destroyed, taken, or carried away, or converted to his own use, the goods and chattels of any such person, or committed any trespass on the real estate of such person."

We think it is also quite significant that the statute last above mentioned has been relied upon in just two cases. The first of these cases was *Barnum v. Jackson,* 165 Wash. 347, 5 P. (2d) 497, wherein we held recovery for damage to an automobile would lie against the administrator of the estate of a wrongdoer. The opinion is very largely based upon the interpretation given to a similar statute of California. Referring to the statute of that state, 1 California Jurisprudence, p. 73, § 43, states:

"It was the intention of the legislature in adopting the latter provision to modify the well-known common-law rule to the extent that where a deceased person had in his lifetime wrongfully destroyed personal property of another to his damage, such person should have a right of action against the personal representatives of such wrongdoer for the recovery of damages sustained by reason of the wrongful act, and it is immaterial that the deceased has not benefited by the act."

The other case wherein § 1520 is mentioned is *West Coast Transport Co. v. Landin,* 187 Wash. 556, 60 P.

(2d) 704. In that case, an action was brought against the administrator of the estate of Alfred E. Landin, and against the estate of his wife, to recover for the destruction of a truck, damage to a trailer, and for loss of some gasoline. Recovery was allowed on the authority of *Barnum v. Jackson, supra.*

We are unable to see that either § 1520, *supra,* or the cases construing this statute are of any assistance to appellant.

We are therefore of the opinion that the trial court correctly concluded that the only recovery to which appellant is entitled, is for the damage to the automobile of the deceased; in other words, that, being a direct damage to personal property of the estate, constituted a trespass committed on the estate of Mr. Boyd during his lifetime.

The judgment of the trial court is affirmed.

ROBINSON, C. J., MAIN, STEINERT, SIMPSON, DRIVER, MILLARD, and BLAKE, JJ., concur.

BEALS, J. (dissenting)—I am not in accord with the majority in holding that appellant executrix may not recover judgment for the amounts she seeks, based upon hospital expenses and doctors' bills. It is clear that the recovery sought for pain suffered by the deceased is not recoverable, and that the $250 covering lost wages should be held consequential damages, and for that reason judgment for that item may not be recovered. It seems to me, however, that a different rule should apply to the hospital expenses and doctors' bills.

Rem. Rev. Stat., § 1519, quoted in the majority opinion, allows a recovery on behalf of the estate of a deceased person, *inter alia,* "for trespass committed on the estate of the deceased during his lifetime." Section 1520, also quoted in the majority opinion, confers certain rights of action against the personal representa-

tives of a wrongdoer. This section refers to "any trespass on the real estate" by the wrongdoer.

Section 1519 was first enacted in 1854 (Laws of 1854, p. 291, § 143). At this time, similar statutes were in force in several states, but apparently gave to the personal representative of a deceased person the right to maintain an action for trespass committed on the real estate of the deceased during his lifetime. In this particular, our statute differs from those of other states. Section 1519 was reenacted without change as Laws of 1917, chapter 156, p. 685, § 149. While it is difficult to understand why a recovery by an administrator should be allowed on a broader basis than a recovery against a personal representative, that is a matter for legislative determination.

The statute must be given effect according to its terms. The word *estate* suggests several different ideas. The word is sometimes used in referring to rank, office, or social position. It is often used as referring to land, or land and the improvements thereon. It is also used in referring to man's possessions, real or personal, a man's estate suggesting the aggregate of that which is his.

In 21 C. J. 914, title "Estates,", § 1, the definition of the word is summed up as follows: "A man's estate is that which he can dispose of at his pleasure."

I am in accord with the majority in its holding that purely consequential damages in such a case as this may not be recovered, but I am convinced that the items of hospital expenses and doctors' bills do not fall within that classification.

Owing to the peculiar wording of our statute, decisions from other jurisdictions are not particularly helpful. It seems to me, however, that such a statute, being remedial in its nature, should not be strictly construed.

In the case of *Noice v. Brown,* 39 N. J. L. 569, it appeared that a widow, as administratrix of the estate of her deceased husband, sued the defendant for the seduction of her intestate's daughter, the alleged seduction having taken place during the husband's lifetime. The court discussed the statute of 4 Edw. III, chapter 7, conferring certain rights of action upon executors, calling attention to the fact that, while by its terms the statute applied only to goods and chattels carried away during the testator's lifetime,

" . . . by an equitable construction of the statute, an executor had the same action for any injury done to the personal estate of the testator in his lifetime, whereby it became less beneficial to the executor, as. the testator himself might have had, whatever the form of the action might be. *Wheatly v. Lane,* 1 *Saund.* 217, b, *(notes); Lockier v. Paterson,* 1 *C. & K.* 271."

The court also noted that the statute did not apply to injuries strictly to the person, nor to injuries to real estate, and observed that, in the case before the court, the plaintiff's right must rest upon the act of the legislature of New Jersey of March 17, 1855, which provided that

" 'Executors and administrators may have an action for any trespass done to the person or property, real or personal, of their testator or intestate, against the trespasser or trespassers, and recover their damages in like manner as their testator or intestate would have had if he or she was living.' "

The court continued:

"Following the liberal interpretation of the English statute, we have held, in this court, that the word 'trespass,' in our act, is synonymous with 'tort.' *Ten Eyck v. Runk,* 2 Vroom 428; *Hayden v. Vreeland,* 8 Vroom 372.

"The description, 'torts to the person and torts to property, real and personal,' *is sufficiently comprehensive* to embrace every possible injury that does not

arise out of contract, unless injuries to the person are narrowed by construction to signify injuries to the body.

"The offences of seduction and libel, where no special damages are laid, are, obviously, strictly personal, being remedies, mainly, for wounded feelings. Feeling being as much a part of the person as the physical frame, no reason appears why an injury to the former is not as much a tort to the person as an assault would be.

"The wrong is of a twofold character, wounding the person in his feelings, and affecting his property rights, resting, as it does, on the technical ground that, by the injury, he lost a service of some pecuniary value. The loss of the service would affect the estate in the hands of the personal representative, and should give equal support to an action by him. The damages being partly punitive, the action should survive, on the ground of public policy, that the punishment may fall on the wrong-doer. The case is within the language, and also within the spirit of the act."

The court held that the complaint stated a cause of action and was not obnoxious to demurrer.

While the New Jersey statute expressly provided that a personal representative should have a right of action for trespass to the "person or property" of his intestate, which, of course, would cover the situation presented in the case at bar, the court gave to the statute a liberal construction, consistent with its manifest purpose.

It would seem that the first portion of § 1519 provides for a right of action on the part of the personal representative for any damage to the goods of the deceased. If the last clause of the section does not provide for the maintenance of such a cause of action as that now under discussion, it is not easy to understand what causes of action it would cover, save one for damage to real estate, and the section is not limited by its terms to such causes of action. We must consider that

the legislature, by omitting the word *real* intended to give a broader meaning to the word *estate* than the word would have had, had it been limited by the word *real*.

In my opinion, § 1519 should be so construed as to permit appellant's recovery for the hospital expenses and doctors' bills incurred by her testator during his lifetime, and by which the estate of her testator is diminished.

In so far as the majority opinion denies recovery for the two items referred to, I dissent.

[1]Reported in 109 P. (2d) 558.