
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DEBORAH BURKSFIELD, a single individual; and AIRBORNE STABLES, LLC, a Washington Limited Liability Company, | ) ) ) ) ) | No. 34772-9-III |
| Appellants, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| LSL PROPERTIES, LLC, a Washington Limited Liability Company, and others determined culpable from discovery before trial; LARRY SALI, an individual; STEVE SALI, an individual, | ) ) ) ) ) ) | |
| Respondents. | ) ) ) | |

SIDDOWAY, J. — Deborah Burksfield appeals after the trial court not only dismissed all of her and her assignee's claims on summary judgment and granted summary judgment against her, but also imposed over $60,000 in attorney fees under RCW 4.84.185. While we agree with the trial court's conclusion that a number of Ms. Burksfield's claims fail as a matter of law, summary judgment was improper as to others and the claims as a whole were not frivolous.

We reverse in part and remand for further proceedings.

No. 34772-9-III
*Burksfield v. LSL Properties, LLC*

FACTS AND PROCEDURAL BACKGROUND

Deborah Burksfield, her daughter, and two of her brothers, Larry and Steve Sali, are the member managers of LSL Properties, LLC (LSL), which owns gravel pits in Yakima County. Larry and Steve Sali formed the limited liability company (LLC) with their brother Leonard in 1998. Following Leonard's sale of his interest to Larry and Steve in 2007 Larry and Steve each owned 41 percent of the membership interests. Ms. Burksfield had obtained an 18 percent interest through transfers from her brothers in 1999 and 2000. She eventually transferred a 1 percent interest to her daughter.

Larry and Steve Sali owned corporations that leased LSL's properties and by 2011, Ms. Burksfield had become convinced that their actions on behalf of LSL were favoring two other corporations they controlled—Columbia Ready-Mix, Inc. and Columbia Asphalt & Gravel, Inc.—to the detriment of LSL. She sued her brothers, their marital communities, the two corporations, and others, bringing claims derivatively on behalf of LSL. Among other claims, she alleged a breach by Larry and Steve (hereafter "the Salis") of LSL's operating agreement, the leases, and their fiduciary duties owed as managers of LSL. That lawsuit is described in more detail in this court's unpublished decision in *Burksfield v. Sali*, No. 33037-1-III (Wash. Ct. App. July 7, 2016) (unpublished) (*Burksfield* I), https://www.courts.wa.gov/opinions/pdf/330371.unp.pdf.

Ms. Burksfield was originally represented in that prior litigation by Seattle lawyers Robert Gould and Brian Krikorian, who took her case on a contingent fee basis. They

2

withdrew before trial, but not before Ms. Burksfield had made payments to Mr. Gould for costs advanced. When Gould and Krikorian withdrew, attorney David Trujillo entered into an hourly fee agreement with Ms. Burksfield. Although some of Ms. Burksfield's claims had been dismissed on summary judgment before trial and another was dismissed at the close of her case, she and LSL prevailed on the remaining claims and the jury awarded LSL damages in the principal amount of $535,674.62.

A posttrial hearing was held on LSL's entitlement to prejudgment interest and on requests for attorney fees that were made by all parties. Ms. Burksfield requested an award of fees under former RCW 25.15.385 (2010), which provided that "[i]f a derivative action is successful, in whole or in part . . . the court may award the plaintiff reasonable expenses, including reasonable attorneys' fees, from any recovery in any such action or from a limited liability company." Her proposed judgment identified RCW 4.84.330 as another basis for a fee award.[1] Both sides sought an award of fees and costs under an indemnification provision included at paragraph 3.2 of the parties' LLC agreement, as fees and costs to which they were entitled by contract. The Salis and Columbia Asphalt & Gravel also suggested that fees could be awarded to them under RCW 4.84.185, the frivolous claim statute.

---

[1] RCW 4.84.330 provides for an award of fees to a prevailing party any time a contract or lease makes them available to either party in an action to enforce contract terms.

No. 34772-9-III
*Burksfield v. LSL Properties, LLC*

During the course of the hearing, the trial court, the Hon. Michael G. McCarthy,[2] questioned both sides' lawyers about whether their request for indemnification under section 3.2 of the LLC agreement was required to be presented first to LSL. The following exchange occurred between Judge McCarthy and Mr. Trujillo:

> THE COURT: Are you asking for your fees under the derivative action statute or are you asking for fees under the LLC Agreement?
> MR. TRUJILLO: We—we asked for fees under the LSL Agreement for bringing the derivative action, and we—
> THE COURT: Doesn't she have to—doesn't your client have to present a bill to the LSL for that—for those costs? Isn't that a separate issue as to whether they're liable?
> MR. TRUJILLO: No, it's—I—we take the position it should be done in court. And if there's any
> THE COURT: Well, I think it should be done in court, but it might have to be done in a different action if—
> MR. TRUJILLO: Yeah, I mean, we served it on them. We're doing it here. We're effectively doing it right—
> THE COURT: Yeah, but you're asking for fees from your—your co-Plaintiff.
> MR. TRUJILLO: Yes, but I think it's the court's position to make that ruling. The majority shareholders are never gonna allow that.
> THE COURT: Well, I don't know that.
> MR. TRUJILLO: Well, the—and certainly the law would not require a useless act. I mean, I—if I thought that would have helped, and believe me we did file the motion for fees and—but anyway, we think it's properly brought here. I guess the court is free to make a ruling that we failed to exhaust our remedy through LSL, but I would take the position that that would just be—I mean it would be a—a useless act. I mean, they're gonna just say no, go take a hike, we'll see you in court, which is essentially how this whole case has been.

Clerk's Papers (CP) at 161-62.

_____

[2] To avoid confusion, we identify the judges that were involved by name.

4

No. 34772-9-III
*Burksfield v. LSL Properties, LLC*

When it was attorney John Maxwell's turn to argue for an award of some of the defendants' fees under section 3.2 of the LLC agreement, Judge McCarthy expressed the same skepticism:

> THE COURT: I guess my—my question to you on that though is very similar to the question I posed to Mr. Trujillo. Isn't that maybe an issue for a different day or a different lawsuit or claim or whatever as to whether I can—I can order the—the LLC to reimburse your clients for their—
> MR. MAXWELL: Yeah. I—I think that—
> THE COURT: I mean, don't you have to under the—remembering the clause is that—and I don't have it in front of me, but basically is, you know, I think it'd be read to say why you'd need to make—a make a claim or submit the bill to the LLC and see if they pay it before there's a—
> MR. MAXWELL: Well I mean, I think that's one way. I—I agree that would be one way to address that issue. The other way would be and I have to raise it at this point—
> THE COURT: Right.
> MR. MAXWELL: —at least and raise it because they've raised it as a contract issue. And say, "Well, we're entitled to fees under a contract and we're responding to that."

CP at 184.

Mr. Maxwell went on to argue his alternative theory for fee recovery—that several of Ms. Burksfield's theories were frivolous—and then returned to the section 3.2 entitlement, telling the court, "You know, if the court feels that the—the indemnity related claims are something that needs to be dealt with first at the LSL level before it comes back to court, so be it." CP at 191. Turning to Ms. Burksfield's request for attorney fees under the statutes dealing with derivative claims, he argued that in considering "the discretionary award of attorney's fees under the derivative claims

5

statute" the court should consider whether claims like Ms. Burksfield's should be encouraged. CP at 191-92.

After hearing the arguments of counsel, Judge McCarthy announced his decision on the several issues that had been argued. He awarded some of the fees and costs requested by Ms. Burksfield, referring only to his discretion under the statutes dealing with derivative claims, stating:

> RCW 25.15.385 gives the court authority to award fees and costs to the successful plaintiff in a derivative action . . . and doesn't really provide any direction in regard to what factors the court's supposed to look at in making a determination as to when and how much. It seems to be a pretty broad grant of authority, but I will take it as being a—a indication from the legislature that they think it's . . . an appropriate device for the court to have at its disposal. And so I do think that fees and costs are appropriate under these circumstances.

CP at 199. He then proceeded to explain which of the fees and costs requested by Ms. Burksfield he would award.

Apparently referring to fees or costs recoverable under the LLC agreement, Judge McCarthy said:

> I think that's a separate issue that perhaps needs—would be litigated in a separate dispute. I think that the —the LLC Agreement does provide for reimbursement for costs and fees associated with, you know, defending actions taken on behalf or in furtherance of the business of the LLC, and I'm not in a position at this time to make a judgment as to whether any of the parties were acting in that regard in this particular litigation, except as to it was a derivative action I guess as to Ms. Burksfield.

CP at 202.

When the court turned to the defendants' request for fees, the only basis on which Judge McCarthy awarded fees was RCW 4.84.185 and its finding that the claim against Columbia Asphalt & Gravel (and only that claim) was frivolous.

After Judge McCarthy announced his decisions on attorney fees, Mr. Trujillo asked whether the court would prepare the judgment and Judge McCarthy responded, "You're drafting it." CP at 211. Mr. Trujillo asked the trial court to give the lawyers "a few minutes . . . [and] we should have something ready for you." CP at 214. About a half hour later, Judge McCarthy and the lawyers reconvened to review what Mr. Trujillo described as his proposed judgment that he had "doctor[ed] up . . . to what I believed reflected your rulings." CP at 215. Although several aspects of the judgment were discussed by Judge McCarthy and the lawyers thereafter, there was no further discussion of the basis for the court's fee award to Ms. Burksfield or Columbia Asphalt & Gravel. In particular, there was no discussion of language in Mr. Trujillo's revised proposed judgment stating that the fee and cost award to Ms. Burksfield was "all consistent with paragraph 3.2 of the parties' LLC contract . . . and RCW 4.84.330, and also all the laws and standards for recovery of attorney's fees where derivative actions benefit the company and create a common fund." CP at 748.

Ms. Burksfield appealed, assigning error to Judge McCarthy's denial of prejudgment interest and his award of costs against her for her unsuccessful claim against Columbia Asphalt & Gravel. The Salis and Columbia Ready-Mix cross appealed,

arguing that Judge McCarthy should have dismissed Ms. Burksfield's derivative claim.

They contended that his refusal to do so

> resulted in a judgment in favor of the Plaintiffs that included an award of reasonable expenses, including reasonable attorney's fees, pursuant to RCW 25.15.385. The Defendants seek to reverse the judgment because there was insufficient evidence presented to support the Plaintiffs' derivative claim.

Defs.'/Resp'ts' Notice of Appeal, No. 33037-1-III (Wash. Ct. App. Jan. 5, 2015); *see also* Resp't/Cross-Appellants' Joint Opening Br., No. 33037-1-III, at 2, 48 (Wash. Ct. App. Sept. 10, 2015) (The court erred "[i]n allowing the [derivative] claim, and awarding fees under the claim" and "the trial court should not have allowed the derivative claim . . . . Accordingly, the trial court's award of attorneys' fees and costs under RCW 25.15.385 should be reversed and vacated.").

*Additional background and procedure in the action below*

With the appeal pending, a meeting of the member managers of LSL was held on March 18, 2015, at which Ms. Burksfield and the Salis addressed their respective demands to have their legal expenses reimbursed by LSL based on section 3.2 of the LLC agreement. Ms. Burksfield had submitted a request for reimbursement of $126,727, representing that the amount was for filing fees, service of process, reasonable expenses, costs of reports admitted and expenses for impeachment. The Salis requested reimbursement of a total of $144,136 in attorney fees and costs, which they and their

8

lawyers contend was the amount of fees the Salis incurred in defending against Ms. Burksfield's unsuccessful personal and derivative claims.

Votes were taken. Ms. Burksfield's request for indemnification was denied, while the Salis' was granted. The Salis cast the deciding votes in favor of denying Ms. Burksfield's request and granting their own. The minutes of the meeting do not reflect the rationale for denying and granting the requests.

In June 2015, Ms. Burksfield, acting pro se, and Airborne Stables LLC, from whom she had borrowed money to finance her prior lawsuit, sued the Salis and LSL. Airborne sued as an assignee of a portion of Ms. Burksfield's indemnification claim. A couple of months later, Ms. Burksfield retained Mr. Krikorian to represent her and he filed a first amended complaint. Ms. Burksfield later moved the court for summary judgment or partial summary judgment.

Nine days before the date set for hearing Ms. Burksfield's summary judgment motion, the Salis filed a response and a cross motion for summary judgment in which they argued that Ms. Burksfield's claims were "either devoid of merit, barred by the statute of limitations, or constitute the frivolous assertion of claims that have already [been] decided in prior litigation." CP at 409. The Salis also contended that Airborne lacked standing. The Salis' cross motion was supported by a declaration of Larry Sali and a sworn statement of Steve Sali. The latter statement was on the pleading paper of LSL's counsel's law firm.

9

Ms. Burksfield's reply brief not only disputed the contention that she was relitigating claims that had already been decided, but objected to the Salis' cross motion as untimely under CR 56(c) and as "unfairly and improperly depriv[ing] plaintiffs of time to prepare an actual response." CP at 442.

On the date set for hearing Ms. Burksfield's motion, the trial court, the Hon. Susan L. Hahn, discussed with counsel whether she should hear the cross motion. Over Ms. Burksfield's objection she determined that she would, concluding that the cross motion dealt strictly with issues of law. Also over Ms. Burksfield's objection, Judge Hahn allowed LSL's lawyer to argue in favor of the cross motion even though LSL had neither moved for summary judgment nor filed a joinder in the Salis' motion. LSL's lawyer explained that he had prepared the Steve Sali sworn statement and had spoken with the Salis' counsel about joining the motion, but got busy with a federal appeal and it "slipped . . . [his] mind." Report of Proceedings (RP) at 9.

Judge Hahn issued a written decision granting the Salis' cross motion and what she treated as LSL's oral joinder at the hearing. On the issue of whether Judge McCarthy had denied Ms. Burksfield's request for indemnification (as the Salis had contended) or reserved it for later resolution, Judge Hahn attached importance to a reference to section 3.2 of the LLC agreement that had been included in Mr. Trujillo's proposed judgment and was not stricken when that judgment was marked up by the lawyers and signed and entered by Judge McCarthy.

Because of the significance attached to the judgment's reference to section 3.2, Ms. Burksfield moved for reconsideration, supported by a declaration from Mr. Trujillo. Mr. Trujillo testified that he drafted the proposed order before Judge McCarthy's oral ruling, so it was based on what Ms. Burksfield had been asking for. Judge Hahn denied the motion for reconsideration, found Ms. Burksfield's first amended complaint to be frivolous, and awarded a total of $64,159.38 in attorney fees and costs against her.

Ms. Burksfield appeals.

ANALYSIS

Ms. Burksfield assigns error on appeal to Judge Hahn's (1) rulings on LSL's indemnification determinations, including its determination that Ms. Burkfield's claim for indemnification is barred by the judgment and appellate decision in *Burksfield* I, (2) order granting a cross motion by the Salis that did not comply with CR 56(c) and affirmative relief to LSL who filed no cross motion at all, and (3) awarding fees under RCW 4.84.185. Br. of Appellant at 1-2.[3] Late in her opening brief, she also argues that Judge Hahn erred by dismissing her claims for post-*Burksfield* I violations of the LLC agreement and ruling that Airborne lacked standing to sue. *Id.* at 32-35. We first address

_____

[3] Ms. Burksfield also assigns error to denial of her motion for reconsideration, but given our disposition of other issues, we need not address that decision.

No. 34772-9-III
*Burksfield v. LSL Properties, LLC*

Ms. Burksfield's challenge to the summary judgment procedure and then turn to the

merits and the fee award.[4]

*Timeliness of the Salis' and LSL's cross motions*

Under CR 56(c), a motion for summary judgment "shall be filed and served not

later than 28 calendar days before the hearing."  It is not uncommon for a party to file a

cross motion that it hopes to be heard at the same time, particularly where it agrees that

an issue of law is dispositive.  The court does not abuse its discretion by hearing the cross

motion on shortened time if there is ample notice and time to prepare.  *Hood Canal Sand*

*& Gravel, LLC v. Goldmark*, 195 Wn. App. 284, 295, 381 P.3d 95 (2016) (citing *State ex*

*rel. Citizens Against Tolls (CAT ) v. Murphy*, 151 Wn.2d 226, 236, 88 P.3d 375 (2004)).

Deviations from CR 56 timing are reviewed for manifest abuse of discretion.

*CAT*, 151 Wn.2d at 236.  In order to succeed on appeal for a deviation from the 28 days'

notice provided by CR 56, the appellant must show it was prejudiced by the ruling.  *CAT*,

151 Wn.2d at 236.  "To establish prejudice, the party making the challenge to an order

shortening time must show a lack of actual notice, a lack of time to prepare for the

---

[4] Respondents ask us to strike Ms. Burksfield's opening brief for its failure to comply with RAP 10.3(a)(5), which requires a reference to the record for every factual statement.  While the brief is seriously noncompliant with that rule, another rule provides that we endeavor to decide appeals on their merits and will not decide them on the basis of compliance or noncompliance with the rules except in compelling circumstances where justice demands.  *See* RAP 1.2(a).  We decline to strike the brief but impose a sanction of $425 on Mr. Krikorian.

motion, and no opportunity to submit case authority or provide countervailing oral argument." *Id*. at 236-37.

At the time of the hearing, Judge Hahn questioned the Salis' lawyer about whether his clients' motion for summary judgment was essentially the flip side of Ms. Burksfield's motion for summary judgment against his clients. Satisfied that it was, the court entertained his argument. Mr. Krikorian did not argue at the hearing that he was prejudiced by the timing of the Salis' cross motion, and he was able to file Ms. Burksfield's reply brief four days after he received the response. We find no abuse of discretion by Judge Hahn in hearing the Salis' cross motion.

Allowing LSL to make and argue an oral cross motion on the day of the hearing is a very different matter. Mr. Krikorian did identify prejudice—he told the court that he "didn't address [the cross motion] as to LSL. I addressed it as to the Salis." RP at 47. When given a chance to respond to LSL's argument he renewed his objection, stating, "I don't want to beat a dead horse, but I just want to make my records clear that I don't think it's appropriate that LSL did not oppose this motion. The brothers opposed this motion individually. And there is no record of even a joinder." RP at 57. His arguments are consistent with his reply brief for Ms. Burksfield, which also served as his opposition to the Salis' cross motion. He observed in that brief that LSL had not filed a response to the motion.

13

There can be no clearer demonstration of prejudice in the form of "a lack of actual notice, a lack of time to prepare for the motion, and no opportunity to submit case authority or provide countervailing oral argument" than for a party to make an oral cross motion on the date set for hearing of the original motion—especially where, as here, a plaintiff's claims include allegations that she was deprived of information by LSL. While LSL's filing of the sworn statement of Steve Sali was a reasonable basis on which to allow LSL to argue in opposition to Ms. Burksfield's motion, it was not a reasonable basis on which to allow it to seek affirmative relief with no notice at all.[5] The trial court erred in granting affirmative summary judgment relief to LSL.

*Summary judgment determinations on whether LSL breached the LLC
agreement in granting and denying indemnification*

We first address Judge Hahn's summary judgment rulings in favor of the Salis' claim that LSL properly agreed to indemnify them and properly denied Ms. Burksfield's request.

When reviewing grants of summary judgment, our review is de novo and we perform the same inquiry as the trial court. *Volk v. DeMeerleer*, 187 Wn.2d 241, 254,

---

[5] The fact that the Salis' cross motion addressed all of the same affirmative relief that LSL wanted does not matter. There could be differences in the strength of certain claims against LSL that would have motivated Ms. Burksfield to defend more aggressively or seek a continuance, and there could be different relevant evidence and arguments. To the extent that there *are* no differences, then it is LSL that is not prejudiced by our ruling. As to such matters, it should be able to make a simple motion of its own following issuance of the mandate.

386 P.3d 254 (2016). Summary judgment is appropriate when there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We construe all facts and all reasonable inferences in the light most favorable to the nonmoving party. *Volk*, 187 Wn.2d at 254.

WAS MS. BURKSFIELD'S RIGHT TO INDEMNIFICATION DECIDED OR RESERVED?

Ms. Burksfield assigns error to the trial court's ruling that res judicata, in the form of the final judgment and appellate decision in *Burksfield* I, bars her indemnification claim.

We begin with this court's decision in *Burksfield* I, which was a decision of the same three judges hearing this appeal. That decision does not compel the conclusion that Judge McCarthy decided the issue of Ms. Burksfield's entitlement under section 3.2 of the LLC agreement. Indeed, the Salis and Columbia Ready-Mix (CRM) contended in *Burksfield* I that the fees were awarded under former RCW 25.15.385 and, on that basis, argued that we could reverse the fee award if we determined that Ms. Burksfield had failed to prove a derivative claim. We had the following to say about that argument:

> CRM argues that the trial court erred in failing to dismiss the derivative claims brought by Deborah Burksfield on behalf of LSL. Thus, CRM asks this court to vacate the trial court's award of attorney fees under [former] RCW 25.15.385. Burksfield argues that she met the requirements for a shareholder derivative claim. We conclude that Burksfield properly brought a derivative claim on behalf of LSL.
> . . . Thus, the trial court correctly ruled that Burksfield's claims fall within the derivative claim statute.

15

*Burksfield* I, No. 33037-1-III, slip op. at 9-10. We went on to observe that "[r]egardless of whether Deborah Burksfield complied with the statute authorizing derivative suits, the trial court could have granted reasonable attorney fees and costs to Deborah Burksfield . . . on other grounds," including, though not limited to, the LLC agreement. *Id*.

In the fact section, we did refer to Mr. Trujillo's judgment language citing the several legal bases with which the fee award was consistent, inferring the trial court's reliance. The inference is dictum. More compelling is the language in our law and analysis section recognizing that the fees were awarded under former RCW 25.15.385.

We do conclude that any claim by Ms. Burksfield for indemnification of her *fees on appeal* in *Burksfield* I is barred by res judicata, but not for the reasons relied upon by Judge Hahn. A claim for those fees is barred because section 3.2 was identified as a basis for Ms. Burksfield's request for fees on appeal. She provided almost no argument about her indemnification right. Whether or not we would have awarded fees under section 3.2 or not, we would at least have distinguished it from her statutory rights if our record had been more complete and the issue being raised now had been raised then (it was not). The fact remains that we denied the fee request and the denial was not appealed.

We turn to the judgment entered by Judge McCarthy. Review of the entire transcript of the fee hearing leaves us with a firm conviction that Judge McCarthy believed that any member seeking indemnification under section 3.2 of the LLC agreement should first present it to LSL, and if there was a dispute it would be resolved

through other litigation. The language of the judgment that Judge Hahn deemed important does not give us pause, for three reasons. First, it is apparent from the transcript that the final judgment was a proposed judgment that was marked up by the lawyers during a recess; it was not prepared by Judge McCarthy. Second, the language does not state that the attorney fees are being awarded under section 3.2 but only that they are "consistent with" that and the other bases for a fee award argued by Mr. Trujillo. CP at 95. If Judge McCarthy read the language, he might not have thought it was inconsistent with his decision that a claim under section 3.2 was premature. Third, even the Salis and CRM contended on appeal in *Burksfield* I that the fees had been awarded under former RCW 25.15.385.

"Res judicata bars relitigation when an issue has been definitively adjudicated; it does not apply where a plaintiff's right to recover damages is 'plainly reserved from adjudication.'" *Cummings v. Guardianship Servs. of Seattle*, 128 Wn. App. 742, 754, 110 P.3d 796 (2005) (quoting *Case v. Knight*, 129 Wash. 570, 574, 225 P. 645 (1924)); RESTATEMENT (SECOND) OF JUDGMENTS § 26 (1980). As observed in comment d to *Restatement* § 26, where a court determines that the plaintiff cannot enforce a given claim in that action but must enforce it, if at all, in a second action, the judgment does not operate as a bar even if it later appears that the determination made in the first action was erroneous.

As in *Cummings*, the indemnification provision was brought to the attention of Judge McCarthy, but based on his belief that a claim under the provision must first be presented to LSL, he reserved the issue.

DOES THE STANDARD FOR INDEMNIFICATION UNDER SECTION 3.2 TURN ON SUCCESS ON PARTICULAR ISSUES, AND DO DECISIONS ON MS. BURKSFIELD'S RIGHT TO REASONABLE FEES AND COSTS UNDER RCW 28.15.385 RESOLVE HER ENTITLEMENT TO INDEMNIFICATION?

The scope of Ms. Burksfield's entitlement under section 3.2 of the LLC agreement will not necessarily be limited to her entitlement to reasonable fees under former RCW 25.15.385. The statute requires that the derivative action be successful, in whole or in part. It authorizes the court to award "reasonable expenses, including reasonable attorneys' fees." *Id.* Where a fee shifting statute does not specify how fees are to be calculated, the lodestar method may be used. *In re Disciplinary Proc. Against Dynan*, 152 Wn.2d 601, 617, 98 P.3d 444 (2004) (citing representative cases). To calculate a lodestar amount, a court multiplies the number of hours reasonably expended by the reasonable hourly rate and should discount hours spent on unsuccessful claims. *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 597, 675 P.2d 193 (1983).

By contrast, rights to indemnification against liability and expense can apply even where a party does not prevail—it depends on the language of the statute or contract. And section 3.2 of the LLC agreement does not include a requirement that a party succeed, or prevail, or that it be indemnified only against "reasonable" expenses.

18

Whether success is a factor, and what other factors are relevant, must be determined under the LLC agreement.

As with the governing documents of a corporation, which are interpreted in accordance with accepted rules of contract interpretation, we will apply contract interpretation principles to the operating agreement of the LLC. *See Roats v. Blakely Island Maint. Comm'n, Inc.*, 169 Wn. App. 263, 273-74, 279 P.3d 943 (2012) (governing documents of a corporation). In Washington, the primary goal in interpreting a contract term is to ascertain the parties' intent at the time they executed the contract. *Paradise Orchards Gen. P'ship v. Fearing*, 122 Wn. App. 507, 516, 94 P.3d 372 (2004). And Washington cases hold that the intent of the parties to a particular agreement

> may be discovered not only from the actual language of the agreement, but also from "viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties."

*Scott Galvanizing, Inc. v. Nw. EnviroServices, Inc.*, 120 Wn.2d 573, 580-81, 844 P.2d 428 (1993) (quoting *Berg v. Hudesman*, 115 Wn.2d 657, 667, 801 P.2d 222 (1990)).

We find the subject matter and objective of indemnification, the statutory indemnification provision of chapter 25.15 RCW, and the reasonableness of the respective interpretations advocated by the parties to be the most important guides to the meaning of section 3.2. In considering the subject matter and objective of indemnification, we look to the thorough regime for indemnification of corporate

directors and officers that has developed and presently exists under the Washington business corporation act, Title 23B RCW.

Under that act, permissive indemnification of directors can extend to expense and liability incurred unsuccessfully in proceedings—it can extend even to judgments entered against the director and the cost of an unsuccessful criminal defense, as long as the indemnified director's actions resulting in the expense or liability meet a minimum standard of conduct. *See* RCW 23B.08.510. Unless the shareholders have committed in advance through the articles of incorporation or bylaws to indemnify directors, RCW 23B.08.550 dictates who will make the decision whether a director is indemnified in a particular case. *And see* RCW 23B.08.560 (shareholder authorized indemnification). If a director is statutorily ineligible but indemnification is approved, litigation might ensue.[6] But if the director is statutorily eligible, whether to indemnify is a business decision.

Mandatory indemnification also exists under the business corporation act, unless limited by a corporation's articles of incorporation, and a party's right to it can be enforced in court. RCW 23B.08.520, .540. It is not a business decision. But it is available only where the director is "wholly successful, on the merits or otherwise, in the defense of any proceeding" to which he or she was a party because of being a director. RCW 23B.08.520.

---

[6] RCW 23B.08.550 seeks to ensure that the decision whether to indemnify is made by disinterested parties, making improper approval unlikely.

Washington statutes dealing with LLCs provide for permissive indemnification for members or managers. RCW 25.15.041[7] permits an LLC to indemnify a member or manager from and against judgments, settlements, penalties, and fines "incurred in a proceeding to which a person is a party because such person is, or was, a member or manager," provided that "no such indemnity shall indemnify a member or a manager from or on account of acts or omissions of the member or manager finally adjudged to be intentional misconduct or a knowing violation of law by the member or manager, or conduct of the member or manager adjudged to be in violation of RCW 25.15.231."[8] But there is no Washington statute that provides for *mandatory* indemnification for members or managers of an LLC.

We interpret section 3.2 as designed to address the situations where mandatory indemnification is appropriate, similar to the business corporation act indemnification regime. Section 3.2 is mandatory. The LLC agreement states that the LLC "*shall* indemnify and hold harmless" its members against certain liabilities, losses, damages, costs, or expenses they incur. CP at 753 (emphasis added). As a result, while the

---

[7] RCW 25.15.041 was amended by the 2015 legislature, and did not become effective until January 1, 2016.

[8] RCW 25.15.231 deals with distributions in violation of LLC agreements.

member managers can vote on a request for indemnification under the provision, their vote is not the definitive answer on what the contract requires. A member or manager who is improperly denied indemnification under section 3.2 will be able to sue.

The language of section 3.2 is strikingly different from the business corporation act's "wholly successful" standard, and the language used must be respected as reflecting the members' intent. But because it is mandatory, it is reasonable to infer that the indemnification provided by section 3.2 should be limited to situations, consistent with its language, in which almost every LLC would conclude that the expense should, in fairness, be borne by the entity—just as the scope of mandatory indemnity under Title 23B RCW is limited in that way. The mandatory indemnification provided by section 3.2 is reasonably read as limited to liability, loss, damage, cost or expense that directly and actually benefits the company in the ways identified in section 3.2. In other words, good intentions and hoped-for results are not enough. The test is objective, not subjective.

We hold that the liability, loss, damage, cost or expense a member or manager incurs has been incurred "on behalf of the company" within the meaning of section 3.2 if it discharges a bona fide liability or obligation that would otherwise be that of the LLC or if it procures an actual, direct benefit for the LLC. The liability, loss, damage, cost or expense a member or manager incurs has been incurred by them "in furtherance of the Company's interests" if the LLC's interests are thereby directly and actually improved.

CP at 753.  In every case, the value to the LLC is measured from the perspective of the LLC.

With section 3.2 thus interpreted, neither Ms. Burksfield nor the Salis is entitled to summary judgment on any members' rights under section 3.2 based on the present record.  We have too little evidence of the amounts requested and no analysis by the parties under the interpretation we announce.  Ms. Burksfield tended to look at the issue subjectively, and under an arguably lower standard.  The Salis tended to look at it as a "fee-shifting/prevailing party" issue, which is not what it says.  And given that the standard is not bright line, it might turn out to be a disputed issue that will have to be tried.[9]

The trial court erred in granting summary judgment that LSL correctly applied section 3.2 when it granted the Salis' request for indemnification and denied Ms. Burksfield's request.

*Post*-Burksfield *I violations of the LLC agreement*

Ms. Burksfield's first amended complaint includes many too-conclusory allegations of failures of LSL and the Salis to account and abide by terms of the LLC agreement.  The particulars that Ms. Burksfield provides through her declarations do not salvage the situation, because almost every act or omission she complains of is time

---

[9] If trial is required, the jury can be instructed on this court's interpretation of the provision.

barred under the six-year limitations period that applies to written contracts under RCW 4.16.040(1). Judge Hahn did not suggest, as Ms. Burksfield contends (and as would clearly be wrong) that no member has any remedy under the operating agreement after the final judgment in *Burksfield* I. She concluded, instead, that Ms. Burksfield did not present evidence of a sufficiently recent violation of the LLC agreement giving rise to a remedy. We agree that most of Ms. Burksfield's claims of violation of the LLC agreement by the Salis do not survive summary judgment.

One violation cited by Ms. Burksfield is her brother Leonard's sale and transfer of his interest in LSL to Larry and Steve in 2007 without complying with the provisions for member rights of first refusal in schedule 4 of the LLC agreement. We do not agree with the Salis' characterization of schedule 4, since section 4.1 prohibits any sale that is not "*specifically* provided [for] herein," CP at 774, and we question (without deciding) whether sales by one member to another member are "specifically provided for" anywhere in schedule 4.[10] We agree with the Salis, however, that the statute of limitations bars Ms. Burksfield's claim. If it did not, her admission in now-final *Burksfield* I that she, Larry, and Steve held interests of 18, 41, and 41 percent respectively would bar her claim.

---

[10] The Salis argue that sales between members are addressed by negative implication in section 4.3, but we question whether a negative implication qualifies as a "specific provision."

24

Ms. Burksfield fails to state a viable claim for an accounting. The LLC agreement and chapter 25.15 RCW entitle her to inspect the LLC's records, *see* LLC agreement at section 4.6 and RCW 25.15.136; oblige the LLC to maintain separate capital accounts for members, *see* LLC agreement at section 6.4; and identify the many categories of records that an LLC must maintain and make available to members, *see* RCW 25.15.136. They do not impose a duty to prepare an accounting.

A party asserting an *equitable* claim for an accounting must show (1) a fiduciary relation existed between the parties, or that the account is so complicated that it cannot be conveniently taken in an action at law, and (2) that the plaintiff has demanded an accounting from the defendant and the defendant has refused to render it. *State v. Taylor*, 58 Wn.2d 252, 262, 362 P.2d 247 (1961) (quoting *Seattle Nat'l Bank v. Sch. Dist. No. 40*, 20 Wash. 368, 373-74, 55 P. 317 (1898)). In Ms. Burksfield's case, we would expect her to show, e.g., that financial statements have not been prepared as required or that the capital account maintained for her is irreconcilable with the company's financial statements and schedule 3 to the LLC agreement. She has come nowhere near to making such a showing.

Finally, she shows no basis on which to compel the court to expel the Salis as members of LSL. She cites to RCW 25.15.140 and .170 and to section 4.8 of the LLC agreement. The statutory provisions merely provide that a limited liability company agreement "may" provide that a member or manager, respectively, will be subject to

25

penalties or consequences upon the happening of certain events, one example being a failure to abide by the LLC agreement. Section 4.8 is such a provision. It gives the managers a right to expel a member or, if the company operates without managers, gives that right to a two-thirds majority of the members. Section 4.8 does not grant expulsion authority to anyone else. It is not a basis for court-ordered relief.

*Airborne's standing*

The trial court erred in dismissing Airborne's claim based on lack of standing.

Washington court rules require that "[e]very action shall be prosecuted in the name of the real party in interest." CR 17(a). Subject to certain exceptions, "the real party in interest is 'the person who, if successful, will be entitled to the fruits of the action.'" *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 716, 899 P.2d 6 (1995) (quoting 3A LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE, CR 17 author's cmt. 1, at 420 (4th ed. 1992)). It is well settled Washington law that the assignee of a contract right is a real party in interest and can bring an action directly. *E.g.*, *Bench v. State Auto. & Cas. Underwriters, Inc.*, 67 Wn.2d 999, 408 P.2d 899 (1965) (per curiam).

"The traditional test for assignability of a cause of action in Washington is this: 'Does the cause of action survive to the personal representative of the assignor? If it does, the cause of action is assignable.'" *Kommavongsa v. Haskell*, 149 Wn.2d 288, 295, 67 P.3d 1068 (2003) (quoting *Cooper v. Runnels*, 48 Wn.2d 108, 110, 291 P.2d 657

26

(1955)). "The legislature has provided for the survival of all causes of action in Washington, subject to certain limitations upon who may recover for 'damages for pain and suffering, anxiety, emotional distress, or humiliation personal to and suffered by a deceased . . . .' RCW 4.20.046(1)." *Id.* Ms. Burksfield's claim for indemnification would survive to her personal representative under RCW 4.20.046(1) and is therefore assignable.

The Salis point to several provisions of the LLC agreement that they argue prevent assignment or enforcement, however. The simplest answer to that argument is that it is beyond the statutory authority of the LLC to prevent the assignment and enforcement of a contract right unrelated to ownership or control.

Under RCW 25.15.018(1), the LLC agreement governs at most (because there are exceptions) "[r]elations among the members as members and between the members and the limited liability company; and . . . [t]he rights and duties under this chapter of a person in the capacity of manager." The agreement may not "[v]ary a limited liability company's power under RCW 25.15.031[11] . . . to . . . be sued" or "[r]estrict the rights under this chapter of a person other than a member, a transferee,[12] or a manager." RCW 25.15.018(3)(a), (o). In short, LSL has no more power to prevent Ms. Burksfield's

---

[11] RCW 25.15.031 provides in relevant part that an LLC generally "has the same powers as an individual to do all things necessary or convenient to carry on its activities."

[12] A "transferee," a defined term, is one who holds the transferor's "right to receive distributions of the limited liability company's assets." RCW 25.15.006(19)-(20).

assignment of her right to reimbursement from LSL than Larry or Steve Sali would have

to prevent one of their creditors from assigning its claim against them.[13]

But reasonably read, the provisions of the LLC agreement on which the Salis

rely—article 10, schedule 4, and sections 4.2 and 13.11—do not exceed LSL's statutory

authority, because they neither prevent Ms. Burksfield from assigning a portion of her

right to indemnification nor do they prevent Airborne from enforcing its assignment.

Article 10 of the LLC agreement is entitled "Restrictions on Transferability" and

incorporates schedule 4 to the agreement. Schedule 4 provides in relevant part that no

member has a right, except as specifically permitted, to "assign . . . all or any part of *any*

*interest in the Company*." CP at 774 (Sched. 4, § 4.1) (emphasis added).

"Interest" is not a defined term in the LLC agreement, but it has a meaning that is

consistent throughout the agreement: it refers to the interest that a member or an

economic interest owner has in the LLC's profits or losses and capital. One of the

accepted meanings of "interest" is:

> **1 a :** right, title, or legal share in something <what exactly is your [interest]
> in this affair> **:** participation in advantage, profit, and responsibility <half
> [interest] in a hardware business> <offered to buy out his [interest] in the
> company> **:** STAKE, CLAIM **b :** something in which one has a share of
> ownership or control **:** BUSINESS <has [interest]s all over the world>.

---

[13] Airborne could even recover the amount owed it by Ms. Burksfield by charging
her membership interest if it took the steps required by RCW 25.15.256. Chapter 25.15
RCW imposes no limitations on a party's ability to enforce an assignment that will result
in a simple money judgment.

WEBSTER'S THIRD INTERNATIONAL DICTIONARY 1178 (1993). This meaning is also consistent with Chapter 25.15 RCW's definition of "transferrable interest" as meaning "a member's or transferee's right to receive distributions of the limited liability company's assets." RCW 25.15.006(19).

A different meaning of "interest" is "the state of being concerned or affected esp[ecially] with respect to advantage or well-being : GOOD, BENEFIT, PROFIT <engaged a lawyer to look after his [*interest*]*s*>." WEBSTER'S, *supra*, 1178 (some emphasis added). The Salis must rely on this more general meaning to see Ms. Burksfield's indemnification claim as an "interest in the company." CP at 774. But nowhere in the LLC agreement is the word "interest" used in that broad sense. Section 4.1 of schedule 4 does not limit a member's right to assign a simple monetary claim against LSL.

The Salis also point to sections 4.2 and 13.11 of the LLC agreement. Section 4.2 provides generally that members shall not be personally liable for debts of the LLC. If Ms. Burksfield proves to be entitled to indemnification, the assignment will require LSL, not its members, to pay a portion of the indemnification liability to Airborne. Section 4.2 has no application.

Section 13.11 provides that none of the provisions of the LLC agreement shall be for the benefit of or enforceable by any creditor of the LLC. Airborne is a creditor of *Ms. Burksfield*, not the LLC. As an assignee, its relation to LSL is analogous to that of a

29

personal representative or bankruptcy trustee asserting a member's right to indemnification; it is not a creditor. Indeed, if it were a creditor of the LLC—a person to whom money is owed—then any member seeking indemnification from the LLC is a creditor, too, and according to that reading of section 13.11 would not be able to enforce a right to indemnification. Obviously, such a reading would be absurd.

It was error to dismiss Airborne's claim as an assignee.

*Attorney fees*

Finally, Ms. Burksfield argues the trial court abused its discretion when it awarded attorney fees to the Salis and LSL under RCW 4.84.185.

RCW 4.84.185 applies to "actions, which, *as a whole*, [are] spite, nuisance or harassment suits." *Biggs v. Vail*, 119 Wn.2d 129, 135, 830 P.2d 350 (1992). "The lawsuit, as a whole, that is[,] in its entirety, must be determined to be frivolous and to have been advanced without reasonable cause before an award of attorneys' fees may be made under the statute." *Id.* at 137. Thus, in *Biggs*, because only three of four claims advanced were frivolous, the Supreme Court reversed the fee award.

We review the trial court's award of fees under RCW 4.84.185 for abuse of discretion. *Eller v. E. Sprague Motors & R.V.'s, Inc*., 159 Wn. App. 180, 189, 244 P.3d 447 (2010). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *Id.* The trial court believed that all of Ms. Burksfield's claims were

frivolous, but on appeal, that belief proves to have been untenable. We reverse the award of fees and costs.

LSL and the Salis request fees in this appeal under RCW 4.84.185. The appeal was not frivolous, so the request is denied.

In conclusion:

We affirm the trial court's denial of Ms. Burksfield's motion for summary judgment.

We reverse the trial court's summary judgment decision in favor of LSL, including its award of attorney fees and costs against Ms. Burksfield.

We reverse the trial court's summary judgment decision in favor of the Salis on only the following issues (we point out that there are some claims against the Salis to which Ms. Burksfield did not assign error which, as to the Salis, are law of the case):

We reverse the summary judgment in favor of the Salis as to their entitlement to indemnification under section 3.2,

We reverse the summary judgment in favor of the Salis as to Ms. Burksfield's nonentitlement to indemnification under section 3.2,

We reverse the summary judgment that Airborne lacked standing to assert its assigned claim.

We reverse its award of fees and costs against Ms. Burksfield.

No. 34772-9-III
*Burksfield v. LSL Properties, LLC*

We impose sanctions on Mr. Krikorian of $425 for noncompliance with

RAP 10.3(a)(5).

We remand for proceedings consistent with this decision.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, J.

_____
Fearing, C.J.

32